**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Hon. Marianne O. Battani |
| IN RE: ALTERNATORS | : | 2:13-cv-00702-MOB-MKM |
| IN RE: STARTERS | : | 2:13-cv-01102-MOB-MKM |
| IN RE: IGNITION COILS | : | 2:13-cv-01402-MOB-MKM |
| IN RE: MOTOR GENERATORS | : | 2:13-cv-01502-MOB-MKM |
| IN RE: INVERTERS | | 2:13-cv-01802-MOB-MKM |
| IN RE: AIR FLOW METERS | | 2:13-cv-02002-MOB-MKM |
| IN RE: FUEL INJECTION SYSTEMS | | 2:13-cv-02202-MOB-MKM |
| IN RE: VALVE TIMING CONTROL DEVICES | | 2:13-cv-02502-MOB-MKM |
| IN RE: ELECTRONIC THROTTLE BODIES | | 2:13-cv-02602-MOB-MKM |
| THIS DOCUMENT RELATES TO: ALL AUTOMOBILE DEALER ACTIONS | : : : : : : | |

**AUTOMOBILE DEALER PLAINTIFFS' NOTICE OF MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH HITACHI
AUTOMOTIVE SYSTEMS, LTD. AND
PROVISIONAL CERTIFICATION OF SETTLEMENT CLASSES**

Pursuant to Federal Rule of Civil Procedure 23(c) and (e), Automobile Dealer Plaintiffs

hereby move the Court for an Order to:

(1)  Preliminarily approve the proposed settlement of the above-captioned litigations with Defendant Hitachi Automotive Systems, Ltd. ("HIAMS");

(2)  Provisionally approve the proposed Settlement Classes;

(3)  Stay the proceedings against Releasees (as defined in the settlement agreement with HIAMS), in particular HIAMS, Hitachi Automotive Systems Americas, Inc., and Hitachi, Ltd. in accordance with the terms of the Settlement Agreement;

(4)  Authorize Automobile Dealer Plaintiffs to provide notice of the Settlement Agreement to  members of their Settlement Classes at a later date in a form and manner to be   approved in advance by this Court; and

    (5)     Appoint Interim Co-Lead Class Counsel for Automobile Dealer Plaintiffs as Settlement Class Counsel for purposes of this settlement.

In support of this Motion, Automobile Dealer Plaintiffs rely upon and incorporate by reference herein the facts and legal arguments set forth in the accompanying Memorandum of Law.

    HIAMS consents to this motion and to the entry of the proposed order.

Dated: April 3, 2015

<div style="margin-left:40%">

By: /s/ Gerard V. Mantese

Gerard V. Mantese (P34424)
Joshua Lushnat (P75319)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203 Facsimile: (248) 457-9201
gmantese@manteselaw.com
jlushnat@manteselaw.com

*Interim Liaison Counsel for the Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
Joel@cuneolaw.com
Vicky@cuneolaw.com

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834.2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

</div>

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS | : | Master File No. 12-md-02311 |
| ANTITRUST LITIGATION | : | Hon. Marianne O. Battani |
|  | : |  |

|  |  |  |
|---|---|---|
| IN RE: ALTERNATORS | : | 2:13-cv-00702-MOB-MKM |
| IN RE: STARTERS | : | 2:13-cv-01102-MOB-MKM |
| IN RE: IGNITION COILS | : | 2:13-cv-01402-MOB-MKM |
| IN RE: MOTOR GENERATORS | : | 2:13-cv-01502-MOB-MKM |
| IN RE: INVERTERS |  | 2:13-cv-01802-MOB-MKM |
| IN RE: AIR FLOW METERS |  | 2:13-cv-02002-MOB-MKM |
| IN RE: FUEL INJECTION SYSTEMS |  | 2:13-cv-02202-MOB-MKM |
| IN RE: VALVE TIMING CONTROL |  | 2:13-cv-02502-MOB-MKM |
| DEVICES |  | 2:13-cv-02602-MOB-MKM |
| IN RE: ELECTRONIC THROTTLE BODIES |  |  |

|  |  |
|---|---|
| THIS DOCUMENT RELATES TO: | : |
|  | : |
|  | : |
| ALL AUTOMOBILE DEALER ACTIONS | : |
|  | : |

**MEMORANDUM OF LAW IN SUPPORT OF**
**AUTOMOBILE DEALER PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF PROPOSED SETTLEMENT WITH HITACHI AUTOMOTIVE**
**SYSTEMS, LTD. AND PROVISIONAL**
**CERTIFICATION OF SETTLEMENT CLASSES**

## STATEMENT OF ISSUES PRESENTED

1. Whether Automobile Dealer Plaintiffs' ("ADs") settlement with Defendant Hitachi Automotive Systems, Ltd. ("HIAMS"), embodied in the Settlement Agreement entered into on March 26, 2015 ("Settlement Agreement") and attached hereto as Exhibit 1, is fair, reasonable, and adequate and should be preliminarily approved;

2. Whether the Court should provisionally certify Settlement Classes under Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(3);

3. Whether the Court should stay the proceedings by ADs against Releasees (as defined in the Settlement Agreement with HIAMS), in particular HIAMS, Hitachi Automotive Systems Americas, Inc., and Hitachi, Ltd. in accordance with the terms of the Settlement Agreement;

4. Whether the Court should authorize ADs to provide notice of the Settlement Agreement to Settlement Class Members (as defined in the Settlement Agreement)[1] at a later date in a form and manner to be approved in advance by this Court; and

5. Whether the Court should appoint Interim Co-Lead Class Counsel for ADs as Settlement Class Counsel for this settlement.

---

[1] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)

*Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *20-21 (E.D. Mich. Sept. 13, 2013)

*Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013)

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Corrugated Container Antitrust Litig.,* 1981 WL 2093 (S.D. Tex. Jan. 27, 1981)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)

*Sheick v. Auto Component Carrier LCC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT ........... 6

ARGUMENT ....................................................................................................... 11

I.    Preliminary Approval Should Be Granted Because The Proposed Settlement Falls Well Within The Range Of Possible Approval ............................... 11

    **A.**    The Settlement Agreement Achieves An Excellent Result For The Proposed Settlement Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation ................................... 14

    **B.**    The Settlement Agreement Is The Result Of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel ............. 17

II.    The Proposed Settlement Classes Should Be Provisionally Certified Pursuant To Rule 23 ....................................................................................... 19

    A.    The Proposed Settlement Classes Meet The Requirements Of Rule 23(a) ...................................................................................... 20

        i.    The Proposed Settlement Classes Are So Numerous That It Is Impracticable To Bring All Class Members Before The Court ................................................................................. 20

        ii.    Automobile Dealer Plaintiff Class Representatives And The Proposed Settlement Classes Share Common Legal And Factual Questions ...................................................... 21

        iii.    Automobile Dealer Plaintiff Class Representatives' Claims Are Typical Of The Claims Of The Members Of The Proposed Settlement Classes ......................................... 23

        iv.    Proposed Settlement Class Counsel and Automobile Dealer Plaintiff Class Representatives Will Fairly and Adequately Protect The Interests Of The Proposed Settlement Classes .......... 24

    B.    The Proposed Settlement Classes Meet The Requirements Of Rule 23(b)(3) ......... 25

        i.    Common Questions of Law and Fact Predominate ...................... 25

        ii.    A Class Action Is The Superior Method To Adjudicate These Claims ................................................................. 28

III.    Notice To The Classes ...................................................... 29

CONCLUSION ................................................................................. 30

iii

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agretti v. ANR Freight Sys., Inc.,*
  982 F.2d 242 (7th Cir. 1992) ............................................................... 11

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................ 25, 26, 29

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds,*
  133 S.Ct. 1184 (2013) ............................................................ 20, 26

*Bacon v. Honda of America Mfg., Inc.,*
  370 F.3d 565 (6th Cir. 2004) ............................................................... 21

*Blades v. Monsanto Co.,*
  400 F.3d 562 (8th Cir. 2005) ............................................................... 27

*Bobbitt v. Acad. of Reporting,*
  2009 WL 2168833 (E.D. Mich. Jul. 21, 2009) ......................................... 12

*Bowers v. Windstream Ky. East, LLC,*
  Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242
  (W.D. Ky. Nov. 1, 2013) ............................................................... 19

*Cason-Merenda v. VHS of Mich., Inc.,*
  Case No. 06-15601, 2013 U.S. Dist. LEXIS 131006
  (E.D. Mich. Sept. 13, 2013) ................................................... 19, 21, 23, 26

*Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.,*
  803 F.2d 878 (6th Cir. 1986) ............................................................... 12

*Comcast Corp. v. Behrend,*
  133 S.Ct. 1426 (2013) ............................................................... 26

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.,*
  502 F.3d 91 (2d Cir. 2007) ............................................................... 27

*Date v. Sony Elecs., Inc.,*
  Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095
  (E.D. Mich. July 31, 2013) ............................................................... 21

*Dillworth v. Case Farms Processing, Inc.,*
  No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446
  (N.D. Ohio Mar. 8, 2010) ............................................................... 28

*Fidel v. Farley,*
  534 F.3d 508 (6th Cir. 2008) ............................................................... 29

*Gautreaux v. Pierce,*
  690 F.2d 616 (7th Cir. 1982) ............................................................... 13

*Golden v. City of Columbus*,
   404 F.3d 950 (6th Cir. 2005) ...................................................................... 21

*Griffin v. Flagstar Bancorp, Inc.*,
   Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702
   (E.D. Mich. Dec. 12, 2013) .................................................... 11, 18, 21, 23

*Hyland v. Homeservices of Am., Inc.*,
   Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892
   (W.D. Ky. Nov. 6, 2008) ........................................................................ 20

*In re Aluminum Phosphide Antitrust Litig.*,
   160 F.R.D. 609 (D. Kan. 1995) ............................................................... 21

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ............................................................. 21, 23

*In re Ampicillin Antitrust Litig.*,
   82 F.R.D. 652 (D.D.C. 1979) .................................................................. 17

*In re Automotive Wire Harness Sys. Antitrust Litig.*,
   Case No. 12-MD-02311 (E.D. Mich. Mar. 8, 2012) ............................... 17

*In re Blood Reagents Antitrust Litig.*,
   283 F.R.D. 222 (E.D. Pa. 2012) .............................................................. 27

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ................................................... passim

*In re Chambers Dev. Sec. Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995) ......................................................... 14

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ......................................................... 19

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
   130 F.R.D. 366 (S.D. Ohio 1990) .......................................................... 18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841
   (N.D. Cal. June 5, 2006) ......................................................................... 22

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
   481 F.3d 1119 (9th Cir. 2007) ................................................................ 15

*In re Foundry Resins Antitrust Litig.*,
   242 F.R.D. 393 (S.D. Ohio 2007) .................................................... passim

*In re Packaged Ice Antitrust Litig.*,
   Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255
   (E.D. Mich. Feb. 22, 2011) ............................................................. passim

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ............ 13

*In re Potash Antitrust Litig.*,
  159 F.R.D. 682 (D. Minn. 1995) .................................................................. 26

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  584 F. Supp. 2d 697 (M.D. Pa. 2008) ......................................................... 16

*In re Rent-Way Sec. Litig.*,
  305 F.Supp.2d 491 (W.D. Pa. 2003) ............................................................ 15

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008) .......................................................... 25, 26, 27

*In re Southeastern Milk Antitrust Litig.*,
  Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223
  (E.D. Tenn. Sept. 7, 2010) ............................................................................ 20

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
  Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714
  (E.D. Ohio Oct. 19, 2001) ....................................................................... 12, 13

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
  219 F.R.D. 661 (D. Kan. 2004) .................................................................... 28

*In re Uranium Antitrust Litig.*,
  617 F.2d 1248 (7th Cir. 1980) ...................................................................... 17

*In re Urethane Antitrust Litig.*,
  251 F.R.D. 629 (D. Kan. 2008) .................................................................... 27

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) ......................................................................... 27

*In re Vitamins Antitrust Litig.*,
  209 F.R.D. 251 (D.D.C. 2002) ..................................................................... 27

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ......................................................................... 15

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ....................................................... 20, 21, 25, 27

*Int'l Union, UAW v. Ford Motor Co.*,
  Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471
  (E.D. Mich. July 13, 2006) ..................................................................... 12, 23

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) ....................................................... 11, 17

*Karkoukli's, Inc. v. Dohany*,
  409 F.3d 279 (6th Cir. 2005) ........................................................................ 29

*Leonhardt v. ArvinMeritor, Inc.*,
  581 F. Supp. 2d 818 (E.D. Mich. 2008) ....................................................... 18

*Levva v. Medline Indus, Inc.*,
  716 F.3d 510 (9th Cir. 2013) ........................................................................ 26

*Marcus v. Dep't of Revenue*,
 206 F.R.D. 509 (D. Kan. 2002) ................................................. 25

*Miller v. Univ. of Cincinnati*,
 241 F.R.D. 285 (S.D. Ohio 2006) ............................................. 20

*Powers v. Hamilton Cnty. Public Defender Comm.*,
 501 F.3d 595 (6th Cir. 2007)................................................... 26

*Rankin v. Rots*,
 No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706
 (E.D. Mich. June 28, 2006)..................................................... 12

*Reed v. Advocate Health Care*,
 268 F.R.D. 573 (N.D. Ill. 2009) .............................................. 27

*Robbins v. Koger Props., Inc.*,
 116 F.3d 1441 (11th Cir. 1997)................................................ 15

*Senter v. Gen. Motors Corp.*,
 532 F.2d 511 (6th Cir. 1976).................................................. 24

*Sheick v. Auto Component Carrier LCC*,
 Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411
 (E.D. Mich. Oct. 18, 2010)..................................................... 17

*Stout v. J.D. Byrider*,
 228 F.3d 709 (6th Cir. 2000).................................................. 23

*Thacker v. Chesapeake Appalachia, L.L.C.*,
 259 F.R.D. 262 (E.D. Ky. 2009) ......................................... 18, 29

*UAW v. Gen. Motors. Corp.*,
 497 F.3d 615 (6th Cir. 2007).................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S.Ct. 2541 (2011) ........................................................ 19

## Other Authorities

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
 § 1522, at 225-26 (2d ed. 1990).............................................. 11

HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41
 (4th ed. 2005) ......................................................... 12, 13, 17, 22

*Manual* § 21.63................................................................... 12

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004) .................... 11

MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.46 (1986)..................... 11

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 235 (3d ed. 1995) ............ 12, 13

NEWBERG ON CLASS ACTIONS § 18.28 at 18-98 (3d ed. 1992) .................... 27

ADs, on behalf of themselves and all others similarly situated, by and through undersigned Interim Co-Lead Class Counsel, respectfully submit this memorandum in support of their motion seeking preliminary approval of a settlement with HIAMS and provisional certification of the proposed Settlement Classes.

## PRELIMINARY STATEMENT

Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, and Electronic Throttle Bodies are among the automotive parts at issue in these coordinated proceedings, *In re Automotive Parts Antitrust Litigation* ("Auto Parts"), MDL No. 2311. Alternators are electromechanical devices that generate an electric current while engines are in operation. Starters are small electric motors used in starting internal combustion engines. Ignition Coils release electric energy to ignite the fuel/air mixture in cylinders. Motor Generators are electric motors used to power electric drive systems that can also capture energy from the process of stopping a vehicle to generate electricity through regenerative braking. Inverters convert direct current electricity to alternating current. Fuel Injection Systems admit fuel or a fuel/air mixture into engine cylinders, and may include injectors, high pressure pumps, rail assemblies, feed lines and other components sold as a unitary system. Fuel Injection Systems can also be sold as part of a broader system, such as an engine management system, or as separate components, such as the injectors, feed lines, high pressure pumps, and/or rail assemblies.

Valve Timing Control Devices control the timing of engine valves' operation, and include the VTC actuator and / or solenoid valve. Air Flow Meters measure the volume of air flowing into engines. Electronic Throttle Bodies control the amount of air flowing into engines. The settlement agreement with HIAMS also covers automotive sensors, automotive transmission control units and

1

automotive engine control units, which are encompassed by HIAMS's plea agreement with the Department of Justice.[2]

These actions arise from alleged conspiracies among the automotive industry's largest manufacturers, marketers, and sellers of Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, and Electronic Throttle Bodies to fix the prices, rig bids, and allocate the market and customers in the United States for such products.  The Alternators Defendants include: DENSO Corp., Hitachi, Ltd., HIAMS, and Mitsubishi Electric Corporation. The Starters Defendants include: Denso Corporation, Hitachi, Ltd., HIAMS, Mitsuba Corporation, and Mitsubishi Electric Corporation. The Ignition Coils Defendants include: Diamond Electric Mfg. Co., Ltd., Diamond Electric Mfg. Corporation Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., Mitsubishi Electric Automotive America, Inc. HIAMS, Hitachi Automotive Systems Americas, Inc. DENSO Corporation, and DENSO International America, Inc. The Motor Generators Defendants include: DENSO Corporation, DENSO International America, Inc., Hitachi, Ltd., HIAMS, and Hitachi Automotive Systems Americas, Inc. The Inverters Defendants include: HIAMS, Hitachi Automotive Systems Americas, Inc., DENSO Corporation, and DENSO International America, Inc. The Fuel Injection Systems, Air Flow Meters, and Electronic Throttle Bodies Defendants include:[3] Aisan Industry Co., Ltd., Franklin Precision Industry, Inc., Aisan Corporation of America, Hyundam Industrial Co., Ltd., DENSO Corporation, DENSO International America, Inc., DENSO International Korea

---

[2] As defined in the Settlement Agreement with HIAMS, the "Released Parts" are Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, Electronic Throttle Bodies, Automotive Sensors, Automotive Engine Control Units and Automotive Transmission Control Units.  Settlement Agreement ¶ 11.

[3] On December 12, 2014, End-Payor Plaintiffs filed their Notice of Intent to File Consolidated Amended Class Action Complaints and Add New Defendants (*see, e.g.,* Case No. 2:13-cv-02203, ECF No. 16), in which they stated that the consolidated amended class action complaint to be filed in the Fuel Injection Systems action will consolidate their claims previously asserted in the Air Flow Meters action and Electronic Throttle Bodies action.

Corporation, HIAMS, Hitachi Automotive Systems Americas, Inc. Keihin Corporation, Keihin North America, Inc. Maruyasu Industries Co., Ltd. Mikuni Corporation, Mikuni American Corporation Mitsuba Corporation, American Mitsuba Corporation, Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., Mitsubishi Electric Automotive America, Inc., Robert Bosch GmbH, and Robert Bosch LLC. The Valve Timing Control Devices Defendants include: Aisin Seiki Co., Ltd., Aisin Automotive Casting, LLC Delphi Automotive LLP, Delphi Automotive Systems, LLP, Korea Delphi Automotive Systems Corp., DENSO International Korea Corporation, DENSO Corporation, DENSO International America, Inc., Hitachi, Ltd., HIAMS, Hitachi Automotive Systems Americas, Inc., Mitsubishi Electric Corporation, Mitsubishi Electric Automotive America, Mikuni Corporation, and Mikuni American Corporation.

ADs filed the first class actions involving Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, and Electronic Throttle Bodies against Defendants in 2013. The Consolidated Amended Class Complaints ("Complaints") were subsequently filed and assert claims for relief under the Sherman Antitrust Act, 15 U.S.C. § 1, and various State antitrust, unjust enrichment, and consumer protection laws.

For pretrial purposes, this Court consolidated and coordinated the ADs cases in Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, and Electronic Throttle Bodies (Case Nos. 2:13-cv-00702; 2:13-cv-01102; 2:13-cv-01402; 2:13-cv-01502; 2:13-cv-01802; 2:13-cv-02002; 2:13-cv-02202; 2:13-cv-02502; 2:13-cv-02602). The Court also appointed the undersigned firms Interim Co-Lead Class Counsel and Interim Liaison Counsel for the Automobile Dealer Actions in the Master Docket for MDL No. 2311. *See id., citing* Master Docket No. 12-md-2311, No. 2:12-cv-00100 (Aug. 7, 2012, ECF No. 271). Throughout these cases, Interim Co-Lead Class Counsel has represented the interests of the classes

of ADs in these actions, including in settlement negotiations with HIAMS. This proposed settlement is a result of those efforts.

ADs and the classes they seek to represent are new car automobile dealerships who indirectly purchased and/or sold one or more of the subject Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, and Electronic Throttle Bodies in the United States, (i) as a component in a new vehicle or (ii) as a stand-alone product. Settlement Agreement ¶ 14. The ADs allege that, in furtherance of the alleged conspiracies, defendants agreed, during meetings and conversations, to allocate the supply of Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, and Electronic Throttle Bodies on a model-by-model basis, and then sold those products at noncompetitive prices to automobile manufacturers in the United States and elsewhere. *See, generally*, ADs' Consolidated Amended Complaint in *In re Fuel Injection Systems* (Docket No. 24, case No. 2:13-cv-02202-MOB).

The United States Department of Justice ("DOJ") has been investigating conspiracies in the market for automotive parts since at least February 2010, and the Federal Bureau of Investigation ("FBI") has participated in raids and executed search warrants carried out in some of Defendants' offices. As a result of the DOJ investigation, HIAMS, a party to the Settlement Agreement that is the subject of this motion, agreed to plead guilty and pay a $195 million criminal fine for participating in conspiracies among major automotive parts manufacturers, the primary purpose of which was to allocate the supply of, rig bids for, and fix, stabilize and maintain the prices of, starter motors, alternators, air flow meters, valve timing control devices, fuel injection systems, electronic throttle bodies, ignition coils, inverters and motor generators sold to, depending on the product, Nissan Motor Company, Ltd., Honda Motor Company, Ltd., General Motors Company, Toyota Motor Corporation, Ford Motor Company, Chrysler Group LLC, Fuji Heavy Industries, Ltd. and

others in violation of the Sherman Act, 15 U.S.C. § 1.  *See* HIAMS Plea Agreement at ¶ 4(a), United States v. Hitachi Automotive Systems, Ltd., 2:13-cr-20707-GCS-PJK (E.D. Mich. Aug. 5, 2013) (ECF No. 8) (Ex. 2).  HIAMS's plea agreement with the DOJ also included cooperation obligations and a release covering Automotive Sensors, Automotive Transmission Control Units, and Automotive Engine Control Units.

HIAMS's plea agreement with the DOJ did not include an order for restitution because of the potential for recovery through civil causes of action.  This settlement is the first reached in each of the Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, and Electronic Throttle Bodies cases.  Though occurring early in these cases, the combined settlements are substantial, providing a guaranteed recovery of $14,760,000.00 to the ADs in these cases.  Standing alone, the recovery from HIAMS is significant.  But the settlement is even more valuable because it also requires HIAMS to provide early and comprehensive cooperation in the form of, inter alia, attorney proffers, interviews with and depositions of witnesses, and the production of certain documents (including transactional data), related to the claims asserted in this case, including information concerning sales of Released Parts.[4]  The ability to obtain such information without protracted and expensive discovery is quite valuable to ADs.  HIAMS's cooperation will greatly enhance Plaintiffs' ability to prosecute their claims against non-settling defendants.

A payment of $14,760,000.00 is a meaningful settlement and is a significant early achievement in this litigation.  HIAMS's sales will remain in the case for purposes of computing the treble damages claim against the non-settling defendants and shall be part of any joint and several liability claims against other current or future defendants.  *See* Settlement Agreement ¶ 53.  In other

---

[4] Including Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, and Electronic Throttle Bodies sold for installation in vehicles known to be exported to the United States.

words, ADs and the proposed Settlement Classes retain their ability to recover from the remaining defendants the entire damages caused by the alleged conspiracies, even those attributable to HIAMS, less only the amount paid by HIAMS in settlement.

ADs and their Interim Lead Counsel believe, for all the reasons set forth, the settlement with HIAMS is in the best interest of the proposed Settlement Classes and merits the Court's preliminary approval. ADs therefore request the entry of an Order:

1.   Preliminarily approving the Settlement;

2.   Provisionally certifying the proposed Settlement Classes;

3.   Staying the proceedings against Releasees (as defined in the Settlement Agreement), in particular HIAMS, Hitachi Automotive Systems Americas, Inc., and Hitachi, Ltd. in accordance with the terms of the Settlement Agreement;

4.   Authorizing ADs to provide notice of the Settlement Agreement to class members at a later date, in a form and manner to be approved in advance by this Court; and

5.   Appointing Interim Co-Lead Class Counsel for ADs as Settlement Class Counsel for this settlement.

**THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT**

The Settlement Agreement with HIAMS arises from extensive arm's length and good faith negotiations. For over a year, counsel participated in fact-gathering sessions and informational meetings, as well as extensive negotiations that took place over the course of two multi-day mediation sessions with mediator Kenneth Feinberg and also through telephone calls and multiple in-person meetings.

**Settlement Classes**: The Settlement Agreement defines the Settlement Classes as follows:

"Alternators Settlement Class" is defined as:

All persons and entities from January 1, 2000, through the Execution Date of this Agreement between HIAMS and Automobile Dealership Plaintiffs who: indirectly purchased one or more Alternators in the United States for resale (i) as a component in a new vehicle or (ii) as a stand-alone product. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental

6

entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Alternators directly or not for resale.

"Starters Settlement Class" is defined as:

All persons and entities from January 1, 2000, through the Execution Date of this Agreement between HIAMS and Automobile Dealership Plaintiffs who: indirectly purchased one or more Starters in the United States for resale (i) as a component in a new vehicle or (ii) as a stand-alone product.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Starters directly or not for resale.

"Ignition Coils Settlement Class" is defined as:

All persons and entities from January 1, 2000, through the Execution Date of this Agreement between HIAMS and Automobile Dealership Plaintiffs who: indirectly purchased one or more Ignition Coils in the United States for resale (i) as a component in a new vehicle or (ii) as a stand-alone product.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Ignition Coils directly or not for resale.

"Motor Generators Settlement Class" is defined as:

All persons and entities from January 1, 2000, through the Execution Date of this Agreement between HIAMS and Automobile Dealership Plaintiffs who: indirectly purchased one or more Motor Generators in the United States for resale (i) as a component in a new vehicle or (ii) as a stand-alone product.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Motor Generators directly or not for resale.

"Inverters Settlement Class" is defined as:

All persons and entities from January 1, 2000, through the Execution Date of this Agreement between HIAMS and Automobile Dealership Plaintiffs who: indirectly purchased one or more Inverters in the United States for resale (i) as a component in a new vehicle or (ii) as a stand-alone product.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Inverters directly or not for resale.

"Fuel Injection Systems Settlement Class" is defined as:

> All persons and entities from January 1, 2000, through the Execution Date of this Agreement between HIAMS and Automobile Dealership Plaintiffs who: indirectly purchased one or more Fuel Injection Systems in the United States for resale (i) as a component in a new vehicle or (ii) as a stand-alone product.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Fuel Injection Systems directly or not for resale.

"Valve Timing Control Devices Settlement Class" is defined as:

> All persons and entities from January 1, 2000, through the Execution Date of this Agreement between HIAMS and Automobile Dealership Plaintiffs who: indirectly purchased one or more Valve Timing Control Devices in the United States for resale (i) as a component in a new vehicle or (ii) as a stand-alone product.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Valve Timing Control Devices directly or not for resale.

"Air Flow Meters Settlement Class" is defined as:

> All persons and entities from January 1, 2000, through the Execution Date of this Agreement between HIAMS and Automobile Dealership Plaintiffs who: indirectly purchased one or more Air Flow Meters in the United States for resale (i) as a component in a new vehicle or (ii) as a stand-alone product.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Air Flow Meters directly or not for resale.

"Electronic Throttle Bodies Settlement Class" is defined as:

> All persons and entities from January 1, 2000, through the Execution Date of this Agreement between HIAMS and Automobile Dealership Plaintiffs who: indirectly purchased one or more Electronic Throttle Bodies in the United States for resale (i) as a component in a new vehicle or (ii) as a stand-alone product.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Electronic Throttle Bodies directly or not for resale.

**Settlement Amount**: HIAMS has agreed to pay USD 14,760,000.00 within thirty (30) days following the execution of the Settlement Agreement.  *See id.* ¶ 27.  The Settlement Amount shall be

paid into an interest-bearing escrow account at The Huntington National Bank. *Id.* ¶ 18, 28. Thereafter, ADs shall allocate the Settlement Amount as follows: For the Alternators Settlement Class, USD 1,992,078.00 plus accrued interest on said deposits; for the Starters Settlement Class, USD 1,239,319.00 plus accrued interest on said deposits; for the Ignition Coils Settlement Class, USD 2,375,839.00 plus accrued interest on said deposits; for the Motor Generators Settlement Class, USD 738,000.00 plus accrued interest on said deposits; for the Inverters Settlement Class, USD 738,000.00 plus accrued interest on said deposits; for the Fuel Injection Systems Settlement Class, USD 2,774,359.00 plus accrued interest on said deposits; for the Valve Timing Control Devices Settlement Class, USD 1,421,993.00 plus accrued interest on said deposits; for the Air Flow Meters Settlement Class, USD 1,282,662.00 plus accrued interest on said deposits; and for the Electronic Throttle Bodies, USD 2,197,750.00 plus accrued interest on said deposits.  The allocation of the Settlement Amount to the Settlement Classes is subject to approval by the Court after notice to the Settlement Classes as directed by the Court.

**Cooperation**: HIAMS has agreed to provide extensive cooperation to the proposed Settlement Classes that will significantly aid in the prosecution of antitrust claims against the remaining defendants.  A general summary of HIAMS's cooperation obligations is provided below. The full extent of this cooperation is set forth in more detail in Section J of the Settlement Agreement.  HIAMS is required to provide, in general, the following types of cooperation, as more specifically set forth in the Settlement Agreement:

(a)     All transactional data that HIAMS provided to the DOJ (including all English Translations thereof produced to DOJ) relating to Released Parts;

(b)     Documents, if any, provided to Government Entities as of the Execution Date of this Agreement (including all English Translations thereof provided to those Government Entities) relating to their investigation into alleged competition violations with respect to Released Parts, except that HIAMS shall not be required to provide documents protected by the work product doctrine, attorney-client privilege, prohibited by the relevant antitrust agencies and/or by the law of the relevant foreign jurisdictions, or prohibited by court order;

9

(c)     Pre-existing transactional data from January 1, 1996 to two years from the Execution Date of the Settlement Agreement related to Released Parts; and

(d)     (1) Documents, if any, that relate to or concern the allegations in the Complaints and reflect collusion or attempted collusion with respect to Released Parts, by an employee, officer, or director of HIAMS with any employee, officer or director of another manufacturer or seller of the Released Parts; (2) documents, if any, concerning HIAMS's determinations of its prices for Released Parts including pricing policies, formulas and guidelines; and (3) documents, if any, showing how employees were trained or instructed to bid and set prices submitted to purchasers or potential purchasers, for Released Parts, in RFQs, or any other procurement process.

**Released Claims**: The Settlement Agreement releases only HIAMS, Hitachi Automotive Systems Americas, Inc., Hitachi, Ltd., Clarion Co., Ltd., Hitachi Vehicle Energy, Ltd. and HIAMS's subsidiaries, parents, affiliates, and predecessors ("Releasees") from all Settlement Class Member claims arising out of or relating in any way to any conduct alleged in the Complaints or any act or omission of Releasees, concerning the Released Parts.  *See* Settlement Agreement ¶ 12.  However, the release does not include Hitachi Metals, Ltd. (including the former Hitachi Cable, Ltd.) and Hitachi Chemical Co., Ltd. or (1) any claims made by direct purchasers of Released Parts; (2) any claims made by End-Payor Plaintiffs that are indirect purchasers of Released Parts; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State, as to government purchases and/or penalties relating to Released Parts; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities, or similar claim relating to Released Parts; (5) claims concerning any automotive part other than Released Parts; (6) claims under laws other than those of the United States and the states thereof; and (7) claims for damages under the state law or local laws of any jurisdiction other than an Indirect Purchaser State.  *Id.* ¶ 25. Further, the Settlement Agreement provides that HIAMS's sales shall remain in the continuing litigation against the non-settling Defendants, who remain jointly and severally liable for all damages caused by the conspiracies. *Id.* ¶ 53.

**ARGUMENT**

The Settlement Agreement is not only fair, reasonable, and adequate—resulting from extensive, arm's length negotiations by experienced counsel—but also a thoughtfully conceived resolution of the proposed Settlement Classes' claims that maximizes their recovery and guarantees early, significant cooperation by HIAMS in the continued prosecution of ADs' claims.

**I.     Preliminary Approval Should Be Granted Because The Proposed Settlement Falls Well Within The Range Of Possible Approval**

It is well-established in the Sixth Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions. *See Griffin v. Flagstar Bancorp, Inc.*, Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013) (citing *UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions")); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). "This policy applies with equal force whether the settlement is partial, involving only some of the defendants, or complete." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at *44 (E.D. Mich. Feb. 22, 2011) ("*Packaged Ice*"); *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions'" (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.46 (1986)). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004) ("*Manual*") ("[S]ettlement should be explored early in the case.").

Approval of a proposed class action settlement proceeds in two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court

11

may grant final approval to the settlement. *See Manual* § 21.63; *see also Bobbitt v. Acad. of Reporting,* 2009 WL 2168833, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." *Manual* § 30.41 at 237; *see also Int'l Union, UAW v. Ford Motor Co.*, Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471 at *11 (E.D. Mich. July 13, 2006). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986). Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) ("*Newberg*") (collecting cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006) ("[T]he only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

In considering whether to grant preliminary approval, the court is not required at this point to make a final determination of the adequacy of the settlement or to delve extensively into the merits of the settlement. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714, at *17 (E.D. Ohio Oct. 19, 2001) ("*Sulzer Hip*"). These inquiries are reserved for the final approval stage of the class settlement approval process. Nor will any class member's substantive rights be prejudiced by preliminary approval because the proposed preliminary approval is solely to provide authority for notifying the class of the terms of the

settlement agreement to set the stage for review of its final approval. *Id.*; *Newburg* § 11.25. Consequently, courts generally engage only in a limited inquiry to determine whether a proposed settlement falls within the range of possible approval and thus should be preliminarily approved. *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714, at *17-18 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain") (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 235 (1995)). *See also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010), *quoting Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (inquiry limited to settlement's potential for final approval and propriety of class notice and fairness hearing).

In evaluating whether a settlement is fair, reasonable and adequate, courts in the Sixth Circuit consider a number of factors:

> (1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *46-47 (quotation marks and citations omitted).

A court is not required, at the preliminary approval stage, to determine whether it ultimately will finally approve the settlement. Nevertheless, as set forth in detail below, preliminary consideration of the factors a court considers when evaluating the fairness of a settlement for purposes of deciding whether to grant final approval supports this Court's granting preliminary approval of the Settlement Agreement.

**A.    The Settlement Agreement Achieves An Excellent Result For The Proposed Settlement Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation**

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (quoting *Linerboard*, 292 F. Supp. at 639); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex"). Motions have already been vigorously contested, and the discovery process would be all the more complicated due to the unique issues that attend discovery against foreign parties.[5]   HIAMS would assert various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain for both parties. *See, e.g., Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *53-54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracies as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

---

[5] Because Interim Co-Lead Class Counsel may have to litigate against the other defendants through trial and appeal, their duties to the Classes preclude a more detailed discussion of their potential litigation risks.

14

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And, even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Classes than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, an early settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Classes. HIAMS's $14,760,000.00 payment provides for significant compensation to the proposed Settlement Classes that will be available earlier—perhaps years earlier—than would be the case if litigation against HIAMS continued through trial and appeal. Early settlements of this type create value beyond their direct pecuniary benefit to the class. Early settlements can serve as "icebreaker" agreements, strengthening plaintiffs' hand in the litigation and encouraging future settlements. *See Packaged Ice*,

2011 U.S. Dist. LEXIS 17255 at *50-51 (noting "significant value" of icebreaker settlement); *Linerboard*, 292 F. Supp. 2d at 643; *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, *16 (S.D. Tex. Jan. 27, 1981 ("*Corrugated Container*").

The Settlement Agreement requires HIAMS to provide substantial cooperation to the ADs' counsel by providing factual proffers, interviews, documents, depositions, and trial testimony, among other cooperation. *See* Settlement Agreement § J. This cooperation is extremely valuable to the classes. The effective early-stage cooperation facilitated by the Settlement Agreement will afford the ADs access to documents and witnesses without protracted and expensive discovery—a significant class-wide benefit. *See, e.g., In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation"); *see also Linerboard*, 292 F. Supp. 2d at 643; *Corrugated Container*, 1981 WL 2093 at *16; *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.").

The value of an early settlement can be so great that early-settling defendants often obtain a substantial discount relative to the remaining defendants. The *Linerboard* court, for example, approved a settlement with the first-settling defendant for less than one percent of sales and approximately one-third of the percentage of sales obtained from the other defendants. *Compare Linerboard*, 292 F. Supp. 2d at 643 (approving icebreaker settlement for approximately 0.4% of sales), *with In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 633 (E.D. Pa. 2004) (approving settlements with final two defendants for 1.6% and 2% of sales). In accepting this discounted recovery from the

16

first-settling defendants, the *Linerboard* court emphasized the "substantial" intangible benefit to the class of the icebreaker agreement. 292 F. Supp. 2d at 643.

The Settlement Agreement also specifically provides that it does not purport to alter the non-settling defendants' joint and several liability for the full damages caused by the alleged conspiracies, including all sales made by these Defendants.  *See* Settlement Agreement ¶ 53.  In this regard, the Settlement Agreement is similar to one of the settlements approved in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from the remaining defendants, less the actual amount of the initial settlement. 1981 WL 2093 at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability).  Here too, the ADs will be able to pursue their full damages, with no diminution other than deduction of the actual HIAMS settlement amount.

**B.      The Settlement Agreement Is The Result Of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel**

This settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel.[6]  *Newberg* § 11.41. The judgment of proposed Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Classes "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *51 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218 F.R.D. at 525.

---

[6] The attorneys who negotiated the Settlement Agreement on behalf of both Automobile Dealer Plaintiffs and HIAMS are highly experienced and capable. *See* Automobile Dealer Plaintiffs' Application For Appointment Of Interim Co-Lead Class Counsel And Liaison Counsel, *In re Automotive Wire Harness Sys. Antitrust Litig.*, Case No. 12-MD-02311 (E.D. Mich. Mar. 8, 2012), ECF No. 24.

Courts give great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990). The Settlement Agreement here is the result of lengthy and hard-fought negotiations between counsel experienced in complex antitrust and consumer class action litigation. The Settlement Agreement, in its initial form, was negotiated over a period of more than a year by Interim Co-Lead Class Counsel in a process that involved multiple discussions with counsel for HIAMS as well as two multi-day mediation sessions with Kenneth Feinberg. Interim Co-Lead Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted extensively with experienced economists before negotiating this deal.

Although the Settlement Agreement comes at an early stage of the multidistrict litigation for these particular parts cases, proposed Settlement Class Counsel was well-informed as to the facts of the case and the strength of the claims asserted when the terms of the Settlement Agreement were initially negotiated. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *56 ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.") (quotation marks and citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (same).

Moreover, these negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008);

18

*Bowers v. Windstream Ky. East, LLC*, Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242, at *5 (W.D. Ky. Nov. 1, 2013). There is nothing in the course of the negotiations or the substance of the settlement that "disclose[s] grounds to doubt its fairness." *Manual* § 30.41.

## II.   The Proposed Settlement Classes Should Be Provisionally Certified Pursuant To Rule 23

The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual* § 21.32, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification. *See, e.g.*, *In re Delphi Corp. Sec. Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement classes, noting the court's earlier, preliminary approval of the settlement classes granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516-17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss).  A court may grant provisional certification where, as here, the proposed settlement classes satisfy the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 140235, at *27-28 (E.D. Mich. Sept. 2, 2010).

While the Supreme Court recently reiterated that a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), "the requisite 'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *20-21 (E.D. Mich. Sept. 13, 2013) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838,

851-52 (6th Cir. 2013)). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("*Amgen*") (citing *Dukes*, 131 S. Ct. at 2552 n.6). "In other words, district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp.*, 722 F.3d 838, 851-52 (internal quotation marks and citation omitted). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met.

### A.    The Proposed Settlement Classes Meet The Requirements Of Rule 23(a)

Horizontal price fixing class actions are routinely certified in this District and elsewhere. ADs' allegations of "a per se violation of the antitrust laws are exactly the kind of allegations which may be proven on a class-wide basis through common proof." *In re Southeastern Milk Antitrust Litig.*, Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept. 7, 2010). "Courts have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present." *Id.* at *33 (internal quotation marks and citations omitted). "As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 409 (S.D. Ohio 2007); *see also Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892, at *12 (W.D. Ky. Nov. 6, 2008).

### i.    The Proposed Settlement Classes Are So Numerous That It Is Impracticable To Bring All Class Members Before The Court

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of*

*Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

The proposed Settlement Classes consist of automobile dealerships, who, from January 1, 2000, through the Execution Date of this Agreement between HIAMS and ADs: indirectly purchased one or more Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or Electronic Throttle Bodies in the United States for resale (i) as a component in a new vehicle or (ii) as a stand-alone product. Because there are thousands of such automobile dealerships geographically distributed throughout the United States, joinder is highly impractical, if not impossible.

>    ii.    **Automobile Dealer Plaintiff Class Representatives And The Proposed Settlement Classes Share Common Legal And Factual Questions**

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 853; *see also Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *22 (one common question of law or fact is sufficient); *Griffin v. Flagstar Bancorp Inc.*, 2013 U.S. Dist. LEXIS 173702 (same); *Date v. Sony Elecs., Inc.*, Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095, at *10 (E.D. Mich. July 31, 2013) (same).

This prerequisite is readily satisfied here because "antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995). Thus, in price fixing cases, courts "have consistently held that the very nature of a conspiracy in an antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic*

*Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006); *see also Newberg* § 3:10 at 278 ("[In an] antitrust action on behalf of purchasers who have bought defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite").

ADs have identified the following issues common to the proposed Settlement Classes:

- Whether Defendants engaged in combinations and conspiracies among themselves to fix, raise, maintain, or stabilizes the prices of Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or Electronic Throttle Bodies sold in the United States;

- Whether Defendants engaged in combinations and conspiracies among themselves to rig bids quoted to customers of Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or Electronic Throttle Bodies sold in the United States;

- Whether Defendants engaged in combinations and conspiracies to allocate customers and the markets for Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or Electronic Throttle Bodies sold in the United States;

- The duration of the illegal contracts, combinations, and/or conspiracies;

- Whether Defendants' conduct resulted in unlawful overcharges on the prices of Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or Electronic Throttle Bodies; and

- Whether unlawful overcharges on the price of Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or Electronic Throttle Bodies was passed-through to the indirect purchasers of Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or Electronic Throttle Bodies, and if so, the appropriate measure of damages.

Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

  **iii.**  **Automobile Dealer Plaintiff Class Representatives' Claims Are Typical Of The Claims Of The Members Of The Proposed Settlement Classes**

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union, UAW v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471 at *54, and courts liberally construe it. *See In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006 at *25 (quoting *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 405); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *40-41. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702, at *17-18 (quotation marks and citation omitted); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (same).

Because the Automobile Dealer Plaintiff Class representatives and the members of the proposed Settlement Classes believe they are all victims of the conspiracies to fix prices, rig bids, and allocate the market and customers for Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or Electronic Throttle Bodies and seek the same relief, Rule 23(a)(3) is satisfied. *See Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006 at *26 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act.") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *40-41 ("Because all Class Members' claims arise from . . . a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met").

iv.      **Proposed Settlement Class Counsel and Automobile Dealer Plaintiff Class Representatives Will Fairly and Adequately Protect The Interests Of The Proposed Settlement Classes**

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 407 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). ADs submit that there are no conflicts between them and the proposed Settlement Classes because ADs and members of the proposed Settlement Classes: (i) purchased in the United States motor vehicles containing Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or Electronic Throttle Bodies; and/or (ii) purchased Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or Electronic Throttle Bodies as a stand-alone product, have the same interest in establishing liability, and all seek damages for the ensuing overcharge.  *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)). ADs and the members of the proposed Settlement Classes also share a common interest in obtaining HIAMS's early and substantial cooperation in prosecuting the claims against the non-settling Defendants.

Rule 23(g) requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The proposed Settlement

Classes are represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the class claims, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation").  The Court appointed Cuneo Gilbert & LaDuca, LLP, Barrett Law Group, P.A., and Larson King, LLP as Interim Co-Lead Class Counsel in this action and the other automotive parts antitrust cases within Master File No. 2:12-md-2311.  *See* Case Management Order No. 3 filed as ECF No. 271. For the same reasons that the Court appointed them to this position, it should appoint them Settlement Class Counsel here.

### B.     The Proposed Settlement Classes Meet The Requirements Of Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("*Amchem*"); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008).  With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

### i.     Common Questions of Law and Fact Predominate

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp.*, 722 F.3d at 859. Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position.'"  *In re Foundry Resins Antitrust*

25

*Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 307).  Common

questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash*

*Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at

535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere

fact that questions peculiar to each individual member of the class action remain after the common

questions of the defendant's liability have been resolved does not dictate the conclusion that a class

action is impermissible." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *19-

20 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). As

pertinent to ADs' request here to provisionally certify the proposed Settlement Classes under Rule

23(b)(3), the Supreme Court very recently instructed that "Rule 23(b)(3) requires a showing that

*questions* common to the class predominate, not that those questions will be answered, on the merits,

in favor of the class." *Amgen*, 133 S.Ct. at 1191.[7]

Because the proposed Settlement Classes allege actions from which all proposed Settlement

Class Members' alleged injuries arise, issues common to the proposed Settlement Class Members—

for example, the existence and scope of the alleged price-fixing conspiracy or conspiracies among

Defendants, the market impact of Defendants' conspiracy or conspiracies, and the aggregate amount

of damage suffered by the class as a result of the alleged antitrust violations—predominate over any

individual questions, and therefore class treatment of the claims is appropriate for purposes of this

---

[7] The Supreme Court's recent decision in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013), supports
the appropriateness of class certification under Rule 23(b)(3) here. In *Comcast*, the Supreme Court
found that the plaintiffs failed to establish that damages could be measured on a class-wide basis
because only one of the plaintiffs' four theories of antitrust impact could be proved in a manner
common to the class. 133 S.Ct. at 1429-31. Under *Comcast*, plaintiffs must be able to show that their
damages stemmed from the defendant's actions that created the legal liability. *See Levva v. Medline
Indus, Inc.*, 716 F.3d 510 (9th Cir. 2013). Here, all of the proposed Settlement Classes' claimed
damages – the overcharge suffered as a result of inflated Alternators, Starters, Ignition Coils, Motor
Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or
Electronic Throttle Bodies – stem from the Defendants' alleged price-fixing conspiracies.

settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *see also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 254 (D.D.C. 2002) ("as a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions") (quoting NEWBERG ON CLASS ACTIONS § 18.28 at 18-98 (3d ed. 1992)). This Circuit has also held "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the *conspiracy* is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535 (quoting *Amchem*, 521 U.S. at 625).[8]  Furthermore, here the evidence that will prove a violation as to one Settlement Class Member is common to the Class and will be sufficient to prove it as to all – the anticompetitive conduct is not dependent on the separate conduct of the individual Settlement Class Members.  *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *43.

This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones, *e.g.*, as long as a common theory can be alleged as to liability and impact that can be pursued by the class.  *See, e.g.*, *In re Whirlpool Corp.*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance).  Issues common to the proposed Settlement Classes predominate in this case—all ADs allegedly paid overcharges that were caused by the Defendants' price-fixing activities.  The

---

[8] Other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See, e.g., Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001); *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 234 (E.D. Pa. 2012); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008); *Foundry Resins*, 242 F.R.D. at 408.

presence of these common issues of liability and impact predominates over any individual issues and strongly support provisional certification of the proposed Settlement Classes.

        **ii.**      **A Class Action Is The Superior Method To Adjudicate These Claims**

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010).

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be "grossly inefficient, costly, and time consuming"). Here, the interests of Settlement Class Members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *Cardizem*, 200 F.R.D. at 325-26 (finding that class action is superior because it ensures fair and efficient adjudication). Hundreds, if not thousands, of dealerships purchased vehicles containing Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or Electronic Throttle Bodies as a component part or purchased Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, or Electronic Throttle Bodies as a replacement part for a vehicle during the Settlement Class Periods; resolving these claims in the context of a class action would conserve both judicial and private resources and would hasten the class members'

recovery. *See, e.g.*, *In re Foundry Resins*, 242 F.R.D. at 411-12 ("Repeatedly litigating the same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results").[9]

## III.   Notice To The Classes

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." With regard to class action claims that are settled, Rule 23(e) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice." *Thacker*, 259 F.R.D. at 271-72. To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (citing *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)).

Interim Co-Lead Class Counsel anticipates additional settlements with Defendants in the *Auto Parts* coordinated proceedings. Because it would be most cost-effective and efficient to disseminate notice of this settlement together with notice of other settlements, the parties have agreed to defer dissemination of notice. As set forth in the Settlement Agreement, "Automobile Dealership Plaintiffs shall, at a time to be decided in their sole discretion, in each Action submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all members of the Settlement Classes identified by Automobile Dealership Plaintiffs (the 'Notice Motions')." Settlement Agreement ¶ 21. The Notice Motion to be

---

[9] Another criterion of Rule 23(b)(3) is manageability. The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

subsequently submitted to the Court for its approval shall include "a proposed form of, method for, and date of dissemination of notice." *Id.* Accordingly, with the Court's permission, proposed Settlement Class Counsel will submit a proposed motion for authorization to disseminate notice at a later date.

## CONCLUSION

For the foregoing reasons, ADs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

1.  Preliminarily approving the Settlement Agreement;

2.  Provisionally certifying the proposed Settlement Classes;

3.  Staying the proceedings against Releasees (as defined in the settlement agreement with HIAMS), in particular HIAMS, Hitachi Automotive Systems Americas, Inc., and Hitachi, Ltd. in accordance with the terms of the Settlement Agreement;

4.  Authorizing ADs to provide notice of the Settlement Agreement to members of the Settlement Classes at a later date, in a form to be approved in advance by this Court; and

5.  Appointing Interim Co-Lead Class Counsel for the ADs as Settlement Class Counsel for this settlement.

Dated: April 3, 2015

<div style="margin-left:auto;">

By: /s/Gerard V. Mantese
Gerard V. Mantese (P34424)
Joshua Lushnat (P75319)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203
Facsimile: (248) 457-9201
gmantese@manteselaw.com
jlushnat@manteselaw.com

*Interim Liaison Counsel for the Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.

</div>

30

Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
Joel@cuneolaw.com
Vicky@cuneolaw.com

Don Barrett
David McMullan
Brian Herrington
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834.2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer Plaintiffs*

## CERTIFICATE OF SERVICE

I, Gerard V. Mantese, hereby certify that I caused a true and correct copy of **NOTICE OF MOTION** AND **MEMORANDUM OF LAW IN SUPPORT OF AUTOMOBILE DEALER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH HITACHI AUTOMOTIVE SYSTEMS, LTD. AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASSES** to be served via e-mail upon all registered counsel of record via the Court's CM/ECF system on April 3, 2015

/s/Gerard V. Mantese
Gerard V. Mantese

31