# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | Honorable Marianne O. Battani |
| | : | |
| In Re: Wire Harness | : | Case No. 2:12-cv-00102 |
| In Re: Instrument Panel Clusters | : | Case No. 2:12-cv-00202 |
| In Re: Fuel Senders | : | Case No. 2:12-cv-00302 |
| In Re: Heater Control Panels | : | Case No. 2:12-cv-00402 |
| In Re: Bearings | : | Case No. 2:12-cv-00502 |
| In Re: Alternators | : | Case No. 2:13-cv-00702 |
| In Re: Anti Vibrational Rubber Parts | : | Case No. 2:13-cv-00802 |
| In Re: Windshield Wiper Systems | : | Case No. 2:13-cv-00902 |
| In Re: Radiators | : | Case No. 2:13-cv-01002 |
| In Re: Starters | : | Case No. 2:13-cv-01102 |
| In Re: Ignition Coils | : | Case No. 2:13-cv-01402 |
| In Re: Motor Generators | : | Case No. 2:13-cv-01502 |
| In Re: HID Ballasts | : | Case No. 2:13-cv-01702 |
| In Re: Inverters | : | Case No. 2:13-cv-01802 |
| In Re: Electronic Powered Steering Assemblies | : | Case No. 2:13-cv-01902 |
| In Re: Air Flow Meters | : | Case No. 2:13-cv-02002 |
| In Re: Fan Motors | : | Case No. 2:13-cv-02102 |
| In Re: Fuel Injection Systems | : | Case No. 2:13-cv-02202 |
| In Re: Power Window Motors | : | Case No. 2:13-cv-02302 |
| In Re: Automatic Transmission Fluid Warmers | : | Case No. 2:13-cv-02402 |
| In Re: Valve Timing Control Devices | : | Case No. 2:13-cv-02502 |
| In Re: Electronic Throttle Bodies | : | Case No. 2:13-cv-02602 |
| In Re: Air Conditioning Systems | : | Case No. 2:13-cv-02702 |
| In Re: Windshield Washer Systems | : | Case No. 2:13-cv-02802 |
| In Re: Spark Plugs | : | Case No. 2:15-cv-03002 |
| In Re: Automotive Hoses | : | Case No. 2:15-cv-03202 |
| In Re: Power Window Switches | : | Case No. 2:16-cv-03902 |
| In Re: Ceramic Substrates | : | Case No. 2:16-cv-12194 |

THIS DOCUMENT RELATES TO
AUTOMOBILE DEALERSHIP ACTIONS

**Auto Dealers' Motion for Final Approval of Settlements (Second Group)
With Certain Defendants, for Certification of Settlement Classes,
and for Approval of Plans of Allocation**

Pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure, the Interim Co-Lead Counsel for the Auto Dealers will move the Court for an Order granting final approval to settlements reached with certain of the Defendants, certifying settlement classes in the settlements, appoint settlement class counsel and settlement class representatives, and approving certain plans for allocating settlements reached by the Auto Dealers and certain Defendants. The Auto Dealers will also seek entry of final judgment, pursuant to Rule 65 of the Federal Rules of Civil Procedure, in the cases for which final approval is sought against certain Defendants.

Dated this 14th day of November, 2016

By: /s/ Gerard V. Mantese
Gerard V. Mantese (P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200
Facsimile: (248) 457-9201
gmantese@manteselaw.com

*Interim Liaison Counsel for the Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com

Don Barrett
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834.2628
dbarrett@barrettlawgroup.com

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

    I, GERARD V. MANTESE, HEREBY CERTIFY THAT I CAUSED A TRUE AND CORRECT COPY OF **Auto Dealers' Motion for Final Approval of Settlements (Second Group) With Certain Defendants, for Certification of Settlement Classes, and for Approval of Plans of Allocation** TO BE SERVED VIA E-MAIL UPON ALL REGISTERED COUNSEL OF RECORD VIA THE COURT'S CM/ECF SYSTEM ON **NOVEMBER 14, 2016**

<u>/s/ Gerard V. Mantese</u>
GERARD V. MANTESE

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS | : | Master File No. 12-md-02311 |
| ANTITRUST LITIGATION | : | Honorable Marianne O. Battani |
| | : | |
| In Re: Wire Harness | : | Case No. 2:12-cv-00102 |
| In Re: Instrument Panel Clusters | : | Case No. 2:12-cv-00202 |
| In Re: Fuel Senders | : | Case No. 2:12-cv-00302 |
| In Re: Heater Control Panels | : | Case No. 2:12-cv-00402 |
| In Re: Bearings | : | Case No. 2:12-cv-00502 |
| In Re: Alternators | : | Case No. 2:13-cv-00702 |
| In Re: Anti Vibrational Rubber Parts | : | Case No. 2:13-cv-00802 |
| In Re: Windshield Wiper Systems | : | Case No. 2:13-cv-00902 |
| In Re: Radiators | : | Case No. 2:13-cv-01002 |
| In Re: Starters | : | Case No. 2:13-cv-01102 |
| In Re: Ignition Coils | : | Case No. 2:13-cv-01402 |
| In Re: Motor Generators | : | Case No. 2:13-cv-01502 |
| In Re: HID Ballasts | : | Case No. 2:13-cv-01702 |
| In Re: Inverters | : | Case No. 2:13-cv-01802 |
| In Re: Electronic Powered Steering Assemblies | : | Case No. 2:13-cv-01902 |
| In Re: Air Flow Meters | : | Case No. 2:13-cv-02002 |
| In Re: Fan Motors | : | Case No. 2:13-cv-02102 |
| In Re: Fuel Injection Systems | : | Case No. 2:13-cv-02202 |
| In Re: Power Window Motors | : | Case No. 2:13-cv-02302 |
| In Re: Automatic Transmission Fluid Warmers | : | Case No. 2:13-cv-02402 |
| In Re: Valve Timing Control Devices | : | Case No. 2:13-cv-02502 |
| In Re: Electronic Throttle Bodies | : | Case No. 2:13-cv-02602 |
| In Re: Air Conditioning Systems | : | Case No. 2:13-cv-02702 |
| In Re: Windshield Washer Systems | : | Case No. 2:13-cv-02802 |
| In Re: Spark Plugs | : | Case No. 2:15-cv-03002 |
| In Re: Automotive Hoses | : | Case No. 2:15-cv-03202 |
| In Re: Power Window Switches | : | Case No. 2:16-cv-03902 |
| In Re: Ceramic Substrates | : | Case No. 2:16-cv-12194 |

THIS DOCUMENT RELATES TO
AUTOMOBILE DEALERSHIP ACTIONS

**Auto Dealers' Memorandum in Support of Motion for Final Approval
of Settlements (Second Group) With Certain Defendants, for Certification of Settlement
Classes, and for Approval of Plans of Allocation**

Gerard V. Mantese (P34424)
**Mantese Honigman, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203
gmantese@manteselaw.com

*Interim Liaison Counsel For The Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
**Cuneo Gilbert & Laduca, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com

Don Barrett
**Barrett Law Group, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com

Shawn M. Raiter
**Larson King, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel For The Automobile Dealer Plaintiffs*

**Statement of the Issues Presented**

1. Whether the settlements between the Auto Dealer Plaintiffs and certain Defendants are fair, reasonable, and adequate and should be granted final approval under Fed. R. Civ. P. 23?

   **Answer:  Yes**

2. Whether the Court should grant final certification to the Auto Dealer settlement classes it previously conditionally certified?

   **Answer:  Yes**

3. Whether the Court should approve new and updated allocation plans for the distribution of the settlement proceeds?

   **Answer:  Yes**

**Controlling or Most Appropriate Authorities**

*Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610,
    2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ............................................................passim

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ...................................................................................passim

*In re Cardizem CD Antitrust Litig.*, No. 08-MD-01952
    2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ................................................................passim

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) .........................................................................................20, 21

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ......................................................................................17, 18, 19

*Sheick v. Auto. Component Carrier LLC*, No. 09—CV-14429,
    2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)...............................................................passim

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ......................................................................................17, 18, 19

*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ..........................................................................................7, 8, 10

## Table of Contents

**Page**

Statement of the Issues Presented.................................................................................i

Introduction...................................................................................................................1

Background...................................................................................................................2

    I.    The Settlements Provide Substantial Benefits to Auto Dealers ......................2

        A.    Cash Benefits ...........................................................................................2

        B.    Cooperation and Other Terms ................................................................4

    II.    The Notice Plan was Carried Out and Provided Adequate
        Notice of the Settlements..................................................................................5

    III.    The Reaction of Settlement Class Members was Positive..............................6

    IV.    The Plans of Allocation of the Settlement Proceeds.......................................6

Legal Standard ............................................................................................................7

Argument .....................................................................................................................9

    I.    The Settlements are Fair, Reasonable, and Adequate and Should be Given Final
        Approval ...........................................................................................................9

        A.    The Likelihood of the Auto Dealers' Success on the Merits Weighed Against
            the Relief Offered in the Settlements Supports Approval..............................10

        B.    The Complexity, Expense, and Likely Duration of Continued Litigation
            Favor Final Approval ...............................................................................12

        C.    The Judgment of Experienced Counsel Who Have Evaluated the Strength of
            the Claims, Defenses, and Risks Supports Approval......................................12

        D.    Class Member Reaction...........................................................................14

        E.    The Public Interest Supports Granting Final Approval to the Settlements...15

        F.    The Settlements are not the Product of Collusion.............................................15

    II.    Notice of the Settlements was Proper Under Rule 23 and Met Due Process
        Requirements..................................................................................................15

iv

A.    There Were No Objections to the Notice Content or Plan ............................ 18

B.     Timing of CAFA Notices and Final Approval Orders .................................. 18

III.    Certification of Settlement Classes is Appropriate ........................................ 17

A.    The Auto Dealer Settlement Classes Satisfy Rule 23(a) .................................. 17

1.    The Settlement Classes are Numerous ................................ 18

2.    Common Questions of Law and Fact Exist ................................ 18

3.    Auto Dealer Plaintiffs' Claims are Typical of Those of the Settlement Class ............................ 19

4.    Auto Dealer Class Representatives and Their Counsel Have Fairly and Adequately Protected the Interests of the Settlement Class Members ............................ 19

B.    Automobile Dealer Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes ............................ 20

1.    Common Legal and Factual Questions Predominate ........................ 20

2.    Class Action Settlements Are Superior to the Other Methods of Adjudication ............................ 21

IV.    The Court Should Appoint Settlement Class Counsel and Auto Dealer Class Representatives ............................ 22

V.    The Court Should Approve the Plans of Allocation Submitted With this Motion …………………………………………………………… 22

Conclusion ............................................................................................... 24

# Table of Authorities

**Page(s)**

## Cases

*Amchem Prod., Inc. v. Windsor,*
    521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ............................................... 17, 20

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007) .................................................................................................21

*Carlough v. Amchem Prod., Inc.,*
    158 F.R.D. 314 (E.D. Pa. 1993) ...........................................................................................16

*Carson v. Am. Brands, Inc.,*
    450 U.S. 79, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981) ...........................................................9

*Crossing Sec. & ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................................13

*Date v. Sony Elecs., Inc.,*
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013) ...............................13, 17, 19

*Dick v. Sprint Commc'ns Co. L.P.,*
    297 F.R.D. 283 (W.D. Ky. 2014) ..................................................................................... 8, 12

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) ...................................................15, 16

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,*
    No. CIV.A. 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) .............................18

*Fidel v. Farley,*
    534 F.3d 508 (6th Cir. 2008) ................................................................................................16

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975) ...................................................................................................8

*Granada Investments, Inc. v. DWG Corp.,*
    962 F.2d 1203 (6th Cir. 1992) .........................................................................................10, 15

*Griffin v. Flagstar Bancorp, Inc.,*
    No. 2:10-CV-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ........................passim

*Grunin v. Int'l House of Pancakes,*
    513 F.2d 114 (8th Cir. 1975) ................................................................................................16

*Hoving v. Lawyers Title Ins. Co.,*
    256 F.R.D. 555 (E.D. Mich. 2009) .......................................................................................20

*Ikon Office Sols., Inc., Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000) ...........................................................................................24

*In re Aetna Inc.,*
    No. CIV. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ......................................24

*In re Am. Med. Sys., Inc.,*
   75 F.3d 1069 (6th Cir. 1996) ........................................................................18

*In re Auto. Refinishing Paint Antitrust Litig.,*
   617 F. Supp. 2d 336 (E.D. Pa. 2007) ..........................................................12

*In re Auto. Refinishing Paint Antitrust Litig.,*
   No. MDL 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ......................8

*In re Cardizem CD Antitrust Litig.,*
   200 F.R.D. 297 (E.D. Mich. 2001) ...............................................................22

*In re Cardizem CD Antitrust Litig.,*
   218 F.R.D. 508 (E.D. Mich. 2003) .........................................................passim

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,*
   No. 3:08-MD-01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ...........12

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.,*
   248 F.R.D. 483 (E.D. Mich. 2008) ...............................................................13

*In re Domestic Air Transp. Antitrust Litig.,*
   141 F.R.D. 534 (N.D. Ga. 1992) ..................................................................16

*In re Flat Glass Antitrust Litig.,*
   191 F.R.D. 472 (W.D. Pa. 1999) ............................................................18, 19

*In re Flonase Antitrust Litig.,*
   284 F.R.D. 207 (E.D. Pa. 2012) ...................................................................22

*In re Linerboard Antitrust Litig.,*
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ..........................................................11

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
   169 F.R.D. 493 (S.D.N.Y. 1996) .............................................................22, 23

*In re Packaged Ice Antitrust Litig.,*
   No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ..........8, 13

*In re Packaged Ice Antitrust Litig.,*
   No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)...........passim

*In re Packaged Ice Antitrust Litig.,*
   No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011).............24

*In re Pressure Sensitive Labelstock Antitrust Litig.,*
   584 F. Supp. 2d 697 (M.D. Pa. 2008) .........................................................11

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.,*
   164 F.R.D. 362 (S.D.N.Y. 1996) ..................................................................16

*In re Scrap Metal Antitrust Litig.,*
   527 F.3d 517 (6th Cir. 2008) ...................................................................20, 21

*In re Se. Milk Antitrust Litig.,*
   No. 2:07-CV-208, 2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ...............21

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) .......................................................................8

*In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*,
   722 F.3d 838 (6th Cir. 2013) ...................................................................17, 18, 19

*Int'l Union v. Ford Motor Co.*,
   No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)....................................passim

*IUE-CWA v. Gen. Motors Corp.*,
   238 F.R.D. 583 (E.D. Mich. 2006)........................................................................ 9, 10

*Lessard v. City of Allen Park*,
   372 F. Supp. 2d 1007 (E.D. Mich. 2005) ..................................................................8

*Levine v. United States*,
   137 F. Supp. 955 (Ct. Cl. 1956) ...........................................................................12

*Marsden v. Select Med. Corp.*,
   246 F.R.D. 480 (E.D. Pa. 2007) ...........................................................................18

*Meijer, Inc. v. 3M*,
   No. CIV.A. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ................................24

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ...................................................16

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006) ...........................................................................8

*Paper Sys. Inc. v. Mitsubishi Corp.*,
   193 F.R.D. 601 (E.D. Wis. 2000) ..........................................................................22

*Peters v. Nat'l R.R. Passenger Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992) ............................................................................15

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ............................................16

*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) ...............................................................................20

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,

   825 F.3d 299, 309 (6th Cir. 2016) ....................................................................... 9, 22

*Sheick v. Auto. Component Carrier LLC*,
   No. 2:09-CV-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ............................passim

*Sheick v. Auto. Component Carrier, LLC*,
   No. 09-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ......................................19

*Sprague v. Gen Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ...........................................................................17, 18, 19

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990) ...............................................................................14

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ........................................................................9

*Taifa v. Bayh*,
    846 F. Supp. 723 (N.D. Ind. 1994) ..........................................................14

*TBK Partners, Ltd. v. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982) ......................................................................14

*Thacker v. Chesapeake Appalachia, L.L.C.*,
    259 F.R.D. 262 (E.D. Ky. 2009) ...............................................................17

*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ...................................................7, 8, 10, 16

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) .........................................................8, 12, 13

**Statutes**

28 U.S.C. § 1715 .........................................................................................18

**Rules**

Fed. R. Civ. P. 23 ...................................................................................passim

Fed. R. Civ. P. 23(a) ...........................................................................17, 20

Fed. R. Civ. P. 23(a)(1) .......................................................................17, 18

Fed. R. Civ. P. 23(a)(2) .......................................................................18, 19

Fed. R. Civ. P. 23(a)(3) .............................................................................19

Fed. R. Civ. P. 23(a)(4) .......................................................................19, 20

Fed. R. Civ. P. 23(b) ...........................................................................17, 20

Fed. R. Civ. P. 23(b)(2) .............................................................................17

Fed. R. Civ. P. 23(b)(3) ......................................................................passim

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................15

Fed. R. Civ. P. 23(e)(1) .............................................................................15

Fed. R. Civ. P. 23(g) ..................................................................................23

**Other Authorities**

4 Newberg on Class Actions (3d Ed. 1992) ............................................21

Manual for Complex Litigation (4th) ........................................................18

**Introduction**

The Automobile Dealer Plaintiffs respectfully seek final approval of provisionally approved settlements with 10 groups of Defendants in this litigation.  These settlements provide nearly $125 million in cash benefits to eligible new vehicle automobile dealerships.  They also provide meaningful cooperation, which affords the Auto Dealers detailed information about the anti-competitive conduct of the Defendants who continue to litigate these cases.  Each of the proposed settlements is fair, reasonable, adequate, and should be granted final approval.

The settlements provide excellent benefits in light of the conduct, damage, and litigation risks related to each of the settling Defendants.  The cash components of the settlements are reasonable compromises of the liability claims and the volume of commerce believed to be affected by the particular settling Defendant's conduct.  The settlements also reflect the value of the cooperation, which will benefit the Auto Dealers' claims against the non-settling Defendants.

Notice of these settlements, as required by Rule 23, was provided through the notice plan previously approved by the Court. Fed. R. Civ. P. 23. The response from the members of the settlement classes was positive.  There were no objections to the settlements, attorneys' fees, litigation expenses, or the request to set aside funds for future class representative service awards.  A handful of dealership groups with multiple locations in the indirect purchaser states elected to opt out.  The favorable reception of these settlements provides good evidence that final approval should be granted.

The Court should certify, for settlement purposes, the settlement classes that it previously conditionally certified in preliminary approval orders.  The settlements meet the Rule 23 requirements for settlement classes and class-wide resolutions are the superior method for resolving the claims against these Defendants.  In doing so, the Court should confirm the appointment of settlement counsel and the class representatives for the Auto Dealers.  Finally, the Auto Dealers

1

respectfully request that the Court approve the new and updated plans of allocation being submitted with this motion.

**Background**

I.     **The Settlements Provide Substantial Benefits to Auto Dealers.**

    A.     **Cash Benefits.**

In a prior series of orders, the Court preliminarily approved settlements (the "Settlements") between the Auto Dealers and a number of the Defendants and their affiliates (the "settling Defendants"). Those Settlements are now before the Court for final approval. The Settlements involve 26 of the component parts that the Auto Dealers contend were the subject of coordination, bid-rigging, and price-fixing. For the Settlements currently before the Court, the settling Defendants and settlement amounts by part are:

| Auto Dealer Settlements and Settlement Funds | | | |
|---|---|---|---|
| **Automotive Parts Case** | **Settling Defendant** | **Amount Settled** | **Settlement Fund** |
| Air Conditioning Systems | DENSO | $6,895,621.02 | $8,995,621.02 |
| | Valeo | $2,100,000.00 | |
| Alternators | MELCO | $5,409,456.63 | $21,340,802.24 |
| | DENSO | $15,931,345.61 | |
| Anti-Vibration Rubber Parts | Sumitomo Riko | $3,247,560.00 | $3,247,560.00 |
| Automatic Transmission Fluid Warmers and Oil Coolers | DENSO | $525,139.87 | $525,139.87 |
| Automotive Hoses | Sumitomo Riko | $352,440.00 | $352,440.00 |
| Bearings | NSK | $7,080,000.00 | $9,480,000.00 |
| | Schaeffler | $2,400,000.00 | |
| Ceramic Substrates | DENSO | $483,517.41 | $483,517.41 |

2

| | | | |
|---|---|---|---|
| Electronic Powered Steering Assemblies | MELCO | $1,014,146.35 | $2,214,146.35 |
| | NSK | $1,200,000.00 | |
| Fan Motors | DENSO | $44,880.00 | $44,880.00 |
| Fuel Injection Systems (includes Air Flow Meters and Electronic Throttle Bodies sold by DENSO) | MELCO | $1,014,146.35 | $7,138,141.17 |
| | DENSO | $6,123,994.82 | |
| Fuel Senders | DENSO | $59,312.42 | $59,312.42 |
| Heater Control Panels | Sumitomo | $689,300.00 | $5,324,040.67 |
| | DENSO | $4,634,740.67 | |
| HID Ballasts | MELCO | $1,014,146.35 | $1,464,084.16 |
| | DENSO | $449,937.81 | |
| Ignition Coils | MELCO | $4,600,167.84 | $9,888,638.49 |
| | DENSO | $5,288,470.65 | |
| Instrument Panel Clusters | DENSO | $2,376,556.40 | $2,376,556.40 |
| Inverters | DENSO | $44,880.00 | $ 44,880.00 |
| Motor Generators | DENSO | $ 44,880.00 | $44,880.00 |
| Power Window Motors | DENSO | $44,880.00 | $44,880.00 |
| Power Window Switches | Omron | $960,000.00 | $960,000.00 |
| Radiators | DENSO | $4,977,154.44 | $4,977,154.44 |
| Spark Plugs, Oxygen Sensors & Air Fuel Ratio Sensors | DENSO | $3,082,220.81 | $3,082,220.81 |
| Starters | DENSO | $3,066,072.02 | $8,268,642.02 |
| | MELCO | $5,202,570.78 | |
| Valve Timing Control Devices | MELCO | $1,014,146.35 | $2,391,632.29 |
| | DENSO | $1,377,485.94 | |
| Windshield Washer | DENSO | $114,624.79 | $114,624.79 |

3

| Systems | | | |
|---|---|---|---|
| Windshield Wiper Systems | DENSO | $1,045,295.54 | $1,045,295.54 |
| Wire Harness Systems | MELCO | $1,014,146.35 | $30,821,836.13 |
| | Sumitomo | $11,310,700.00 | |
| | DENSO | $4,588,989.78 | |
| | LEONI | $468,000.00 | |
| | Furukawa | $13,440,000.00 | |
| | **Total** | | **124,730,980** |

(*See* Orders approving settlements between Auto Dealers and: Sumitomo [Case No. 2:12-cv-00402, ECF No. 188; Case No. 2:12-cv-00102, ECF No. 423 (Jan 29, 2016)]; DENSO [Case No. 2:13-cv-02702, ECF No. 79; Case No. 2:13-cv-02002, ECF No. 56; Case No. 2:13-cv-00702, ECF No. 95; Case No. 2:13-cv-02402, ECF No. 58; Case No. 2:16-cv-12194, ECF No. 13; Case No. 2:13-cv-02602, ECF No. 48; Case No. 2:13-cv-02102, ECF No. 60; Case No. 2:13-cv-02202, ECF No. 197; Case No. 2:12-cv-00302, ECF No. 169; Case No. 2:12-cv-00402, ECF No. 205; Case No. 2:13-cv-01702, ECF No. 175; Case No. 2:13-cv-01402, ECF No. 101; Case No. 2:12-cv-00202, ECF No. 169 Case No. 2:13-cv-01802, ECF No. 71; Case No. 2:13-cv-01502, ECF No. 100; Case No. 2:13-cv-02302, ECF No. 82; Case No. 2:13-cv-01002, ECF No. 124; Case No. 2:15-cv-03002, ECF No. 14; Case No. 2:13-cv-01102, ECF No. 87; Case No. 2:13-cv-02502, ECF No. 155; Case No. 2:13-cv-02802, ECF No. 81; Case No. 2:13-cv-00902, ECF No. 108; Case No. 2:12-cv-00102, ECF No. 502 (Aug. 25, 2016)]; NSK [Case No. 2:12-cv-00502, ECF No. 187; Case No. 2:13-cv-01902, ECF No. 153 (Aug. 25, 2016)]; LEONI [Case No. 2:12-cv-00102, ECF No. 501 (Aug. 25, 2016)]; Omron [Case No. 2:16-cv-03902, ECF No. 4 (Sept. 9, 2016)]; Furukawa [Case No. 2:12-cv-00102, ECF No. 500 (Sept. 1, 2016)]; Schaeffler [Case No. 2:12-cv-00502, ECF No. 186 (Aug 25, 2016)]; MELCO [Case No. 2:13-cv-00702, ECF No. 103; Case No. 2:13-cv-01902, ECF No. 163; Case No. 2:13-cv-

02202, ECF No. 208; Case No. 2:13-cv-01702, ECF No. 183; Case No. 2:13-cv-01402, ECF No. 113; Case No. 2:13-cv-01102, ECF No. 95; Case No. 2:13-cv-02502, ECF No. 164; Case No. 2:12-cv-00102, ECF No. 515 (Oct. 31, 2016)]; Sumitomo Riko [Case No. 2:13-CV-00802, ECF No. 150; Case No. 2:15-cv-03202, ECF No. 16 (Aug. 25, 2016)]; and Valeo [Case No. 2:13-cv-02702, ECF No. 79 (Aug. 25, 2016)].

The different parts and settling Defendants result in 40 different settlement classes in the Settlements (the "Settlement Classes). (*Id.*) The Auto Dealers negotiated the Settlements in tandem with the End Payors to allow the settling Defendants to resolve the indirect purchaser claims in the litigation. (*See* Declaration of Shawn M. Raiter). As part of these negotiations, the Auto Dealers considered the particular Defendants' conduct, the amount of commerce affected by that conduct, and the value of other settlement terms, like cooperation, being offered by the settling Defendant. (*Id.*)

The Settlements provide approximately $125 million in gross settlement funds for eligible dealerships in the Settlement Classes. When combined with the first group of Auto Dealer settlements, approximately $184 million has been recovered for the benefit of Auto Dealers. In the opinion of counsel for the Auto Dealers, the Settlements provide an excellent result for the Settlement Classes and are fair, reasonable, and adequate. (Raiter Decl.)

**B.    Cooperation and Other Terms.**

In addition to the cash payments, the settling Defendants are required to provide the Auto Dealers with various forms of cooperation that include: (1) the production of certain documents and data relevant to the ongoing claims against the non-settling Defendants; (2) interviews with representatives of the settling Defendants; (3) the assistance in understanding certain data and other information produced to Auto Dealers; and (4) facilitating the use of such data and information at

trial. Those terms were set out in detail in the preliminary approval motions and the agreements between the parties (the "Settlement Agreements").

## II.    The Notice Plan was Carried Out and Provided Adequate Notice of the Settlements.

The Settlements provide cash benefits to automobile dealerships that purchased certain parts and/or new vehicles containing those parts in jurisdictions that the Auto Dealers contend allow antitrust indirect purchasers to seek money damages: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "Included States").

Through class action notice consultant Gilardi & Co., potential automobile dealer class members in the Included States were identified and were mailed a long form notice that provided information these Settlements. (*See* Declaration of Kenneth Jue.) The notice consultant also sent long form notices to email addresses associated with automobile dealerships that may have purchased new vehicles and parts in the Included States. (*Id.*) A multi-faceted notice program intended to provide the best notice practicable under the circumstances was therefore carried out and included:

- Direct mail notice to approximately 15,000 postal addresses of automobile dealerships potentially eligible for money benefits under the Settlements;

- Email notice to approximately 100,000 email addresses associated with automobile dealerships potentially eligible for money benefits under the Settlements;

- Published notice in magazines like Ward's AutoWorld, Automotive News, and Auto Dealer Monthly and digital media designed to target new car automobile dealerships nationwide;

- Online media efforts through outlets like Facebook and Twitter; and

- Earned media efforts through a national press release and the settlement web site, www.AutoDealerSettlement.com

6

(*See* Jue Decl.)   The notice plan "reached" more than 95 per cent of the potentially eligible automobile dealers in the Included States.   (*Id.*)

### III.   The Reaction of Settlement Class Members was Positive.

The reaction to these Settlements was positive.   There were no objections to any of the 37 different Settlement Classes.   (*See* Jue Decl.)   No class member objected to the terms of the Settlements, the notice plan, the requested attorneys' fees, cost reimbursement or litigation funds, or the motion to set aside money for future service awards.   (*Id.*)   No class member requested an opportunity to be heard at the final fairness hearing.   (*Id.*)

Despite efforts by attorneys who solicit class members to opt-out of antitrust settlements, only a small percentage of the potential Settlement Class members from the Included States requested exclusion.   Four dealership groups and some individual dealerships—represented by the same law firms—elected to opt out.   (Jue Decl.)   Those groups are believed to operate between 190 and 260 new vehicle dealerships at locations in the Included States.   (Jue Decl.; Raiter Decl.) Through communications with counsel for the Auto Dealers, one or more of those groups may elect to withdraw their exclusions and participate in the Settlements.   (Raiter Decl.)   However, even with the current requests for exclusion, approximately 99 per cent of the dealerships in the Included States elected to remain in the Settlement Classes.   (*Id.*)

### IV.   Plans of Allocation of the Settlement Proceeds.

For a number of the parts at issue in the Settlements, the Court previously approved plans for distributing the net settlement proceeds to dealerships that submit claim forms for new vehicles and affected component parts purchased in the Included States ("Plans of Allocation").   In general, the Plans of Allocation allocate the net proceeds of a Settlement to:

- Dealers who purchased vehicle models that were subject to alleged coordinated activity on bids for component parts;

- Dealers who purchased subsequent vehicle models that were subject to alleged coordinated activity on bids for component parts;

- Dealers who purchased vehicles whose manufacturers experienced multiple instances of alleged coordinated activity on bids for component parts;

- Dealers who purchased other vehicles;

- Dealers who purchased component parts subject to allegedly coordinated activity; and

- A reserve fund for future allocation and distribution to eligible Settlement Class members.

As part of this motion, the Auto Dealers now request approval of: (1) Plans of Allocation for parts for which plans have not been submitted to the Court; (2) amended Plans of Allocation for parts for which new information has been obtained about affected makes and models, and (3) Plans of Allocation previously submitted to the Court but which have not been approved.  The following is a summary of the plans for which approval is sought:

| | | |
|---|---|---|
| **Not previously submitted to the Court)** | Alternators | 2:12-cv-02702 |
| | Electronic Throttle Bodies | 2:13-cv-02602 |
| | Fuel Injection Systems | 2:12-cv-02202 |
| | Fuel Senders | 2:12-cv-00302 |
| | HID Ballasts | 2:13-cv-01702 |
| | Ignition Coils | 2:13-cv-01402 |
| | Motor Generators | 2:13-cv-01502 |
| | Starters | 2:13-cv-01102 |
| **Previously Approved But Now Amended** | Inverters | 2:12-cv-01802 |
| | Occupant Safety Systems | 2:12-cv-00602 |
| | Switches | 2:12-cv-01302 |
| | Wire Harness | 2:12-cv-00102 |
| **Previously Submitted But Not Yet Approved** | Air Flow Meters | 2:12-cv-02002 |
| | Automatic Transmission Fluid Warmers | 2:12-cv-02402 |
| | Automotive Radiators | 2:12-cv-01002 |
| | Instrument Panel Clusters | 2:12-cv-00202 |
| | Steering Angle Sensors | 2:12-cv-01602 |
| | Valve Timing Control Devices | 2:12-cv-02502 |

(See Exs. A-R to Raiter Decl.)

## Legal Standard

The Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *7 (E.D. Mich. Feb. 22, 2011); *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions).

To be given final approval, a class action settlement must be "fair, reasonable, and adequate." *Sheick v. Auto. Component Carrier LLC*, No. 2:09-CV-14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010); *see also In re Packaged Ice*, 2011 WL 717519, at *8. "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).

The court considers whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams*, 720 F.2d at 921–23). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); *Sheick*, 2010 WL 4136958, at *14–15.

The court has broad discretion when approving a class action settlement. *UAW*, 497 F.3d at 636; *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In exercising this discretion, courts give

9

considerable weight and deference to the view of experienced counsel as to the merits of an arm's-length settlement. *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation"). Indeed, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted); *see also In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003).

The court must "carefully scrutinize" whether the settlement is fair, reasonable, and adequate and whether the named plaintiffs and their counsel have met their fiduciary obligations to the class. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016). Because a settlement represents an exercise of judgment by the negotiating parties, a judge reviewing a settlement will not "substitute his or her judgment for that of the litigants and their counsel," *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006), or "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981). Because of the uncertainties and risks inherent in any litigation, courts take a common sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick*, 2010 WL 4136958, at *15 (citation omitted). The court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

**Argument**

**I.     The Settlements are Fair, Reasonable, and Adequate and Should be Given Final Approval.**

The Auto Dealer settlements before the Court meet the criteria required for final approval under Rule 23 of the Federal Rules of Civil Procedure.  They provide meaningful benefits and were reached after negotiations between experienced counsel who were armed with sufficient background about the merits and defenses to the claims asserted.   The settlements reflect a reasonable compromise in light of the liability, damages, and procedural uncertainties facing both the Auto Dealers and the settling Defendants.

Courts in the Sixth Circuit consider a number of factors when determining whether a settlement should be granted final approval: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest.  *Packaged Ice*, 2011 WL 717519, at *8; *see also UAW*, 497 F.3d at 631; *Griffin*, 2013 WL 6511860, at *3; *Cardizem*, 218 F.R.D. at 522.  No single factor is determinative and the court may weigh each factor based on the circumstances of the case.  *Int'l Union,* 2006 WL 1984363, at *21.  The court may "choose to consider only those factors that are relevant to the settlement at hand."  *Id.* at *22; *see also Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992) (holding that a district court enjoys wide discretion in assessing the weight and applicability of factors).

**A.     The Likelihood of the Auto Dealers' Success on the Merits Weighed Against the Relief Offered in the Settlements Supports Approval.**

The court assesses class action settlements "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

11

costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, at *15 (quoting *IUE-CWA*, 238 F.R.D. at 594; *Int'l Union*, 2006 WL 1984363, at *21). The fairness of such a settlement "turns in large part on the bona fides of the parties' legal dispute." UAW, 497 F.3d at 6331. When considering the likelihood of plaintiffs' success on the merits of the litigation, the ultimate question is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued. *Sheick*, 2010 WL 4136958, at *16 (citing *IUE-CWA*, 238 F.R.D. at 595).

The Auto Dealers believe they will prevail in these cases. But they also recognize that success is not guaranteed in any complex litigation. Although there were illegal conspiracies to coordinate bidding and other activities on component parts, the settling and non-settling Defendants have vigorously defended these cases. Some Defendants have claimed that the Auto Dealers cannot prove that the bid rigging caused them an antitrust injury. Other Defendants have previewed arguments about class certification, which they contend should not be granted in the Auto Dealer cases. The Settlements reflect both the strengths of the Auto Dealers' claims and the risk that the settling Defendants may prevail on some of their arguments.

The settling Defendants are represented by experienced and competent counsel and were prepared to defend these cases through trial. While there is risk in any litigation, antitrust class actions are inherently high-stakes and high-risk. Auto Dealers are optimistic about the outcome of these cases, but must acknowledge that the settling Defendants could prevail on certain legal or factual arguments and by doing so, could reduce or eliminate potential recoveries for the Auto Dealers. The certainty and substantial benefits provided by the Settlements support a finding that they were reasonable and adequate.

For some of these parts, these are the first Auto Dealer settlements. This gives those Settlements some "ice-breaker" value. *Packaged Ice*, 2011 WL 717519, at *10; *In re Linerboard Antitrust*

12

*Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). The cooperation that the settling Defendants have agreed to provide is a "substantial benefit" to the class and "strongly militates toward approval" of the Settlements. *Linerboard*, 292 F. Supp. 2d at 643. This cooperation will enhance and strengthen the Auto Dealers' prosecution of claims against the Defendants who continue to litigate these cases. *Linerboard*, 292 F. Supp. 2d at 643; *Packaged Ice*, 2011 WL 717519, at *10 (noting that cooperation by the settlement defendant "has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants"); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("the benefit of obtaining the cooperation of the Settling Defendants tend to offset the fact that they would be able to withstand a larger judgment.").

The nearly $125 million being made available here is a reasonable compromise of the disputed claims against these Defendants. As previously noted, the Defendants contend that although there may have been coordination of bids, that coordination did not result in artificially inflated prices for the parts at issue. The Defendants have also argued that the Auto Dealers passed any price increases on to consumers. Finally, some of the Defendants focus on the relatively limited scope of bid coordination on some parts and the corresponding amount of affected commerce, which they contend was not significant.

For each of these Settlements, counsel for the Auto Dealers analyzed, among other things, the strength of the liability claims against the particular Defendant, the volume of affected commerce, the value of the particular cooperation being provided, and the range of damage that could be proven at trial against the Defendant. The money being paid and the cooperation for future claims provide substantial value in light of the risks of continuing the litigation. Interim Co-Lead Class Counsel for the Auto Dealers believe that the Settlements represent an excellent recovery for Auto Dealers. Weighing the benefits of the Settlements against the risks of continued litigation

tilts the scale heavily toward final approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.

**B.     The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval.**

"Settlement should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" Cardizem, 218 F.R.D. at 523 (quoting *Williams*, 720 F.2d at 922); *Levine v. United States*, 137 F. Supp. 955, 1013 (Ct. Cl. 1956) (settlement avoid the costs, delays, and multitude of other problems associated with class actions, which are "inherently complex."); *Cardizem*, 218 F.R.D. at 533 ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex . . . .").

The Auto Dealers continue to litigate with the Defendants who have not yet settled making it impossible for Auto Dealers to spell out with specificity their analysis of the risks of litigating versus settling. The Court, however, has had substantial opportunity to consider the claims and defenses in this litigation and knows that complex antitrust litigation of this scope has many inherent risks that settlements extinguish. These cases would likely continue for years, at great expense, if they were litigated through an adversarial judgement and any appeals. The fact that the Auto Dealers achieved substantial recoveries, which eliminate risk while ensuring substantial payments, supports final approval of the Settlements.

**C.     The Judgment of Experienced Counsel Who Have Evaluated the Strength of the Claims, Defenses, and Risks Supports Approval.**

The Settlements were reached by experienced counsel after arm's-length negotiations and are therefore provided deference. *Dick*, 297 F.R.D. at 296 ("Giving substantial weight to the recommendations experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate . . . .") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-

14

MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007).

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interest of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18). "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. July 31, 2013) (quoting *Williams*, 720 F.2d at 922–23).

Interim Co-Lead Counsel for the Auto Dealers are experienced in handling class action antitrust and other complex litigation. They have represented the interests of Auto Dealers from the inception of this litigation and negotiated the Settlements at arms' length with well-respected and experienced counsel for the settling Defendants. Interim Co-Lead Counsel believe that the Settlements each provide an excellent result in light of the circumstances of each settling Defendant's conduct and potential liability. (Raiter Decl.)

Discovery in the cases involved in the Settlements varied, but in each case counsel for the Auto Dealers was armed with important information about the conspiracies through review of documents produced to the Department of Justice, proffers of information by cooperating Defendants, and/or discovery from this litigation. The amount of discovery completed is a factor to be considered in the settlement approval process, but there is no baseline required to satisfy this factor. *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *5-6. The "question is whether the

parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)).

This litigation has been pending for more than four years for some parts and three years for others. Much has been done and the parties are well-acquainted with the facts, claims, and defenses. The discovery and available information allowed Interim Co-Lead Counsel for the Auto Dealers to evaluate the strengths and weaknesses of the claims and defenses and to evaluate the benefits of the Settlements. These are not settlements reached without substantial discovery and investigation. Interim Co-Lead Counsel for the Auto Dealers believe that the Settlements are fair, reasonable, and in the best interests of Auto Dealers who purchased new vehicles containing the parts at issue in the Settlements. (Raiter Decl.) The opinion of counsel supports final approval of the Settlements.

### D.    Class Member Reaction.

There were no objections to any of the settlements. This is remarkable because there are often at least a few objections to class settlements. "A certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement." *Cardizem*, 218 F.R.D. at 527. This reaction from the members of the settlement classes strongly supports the adequacy of the settlements. *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors settlement"); *see also TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of large number of class); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of class).

Notice of these settlements was sent by direct mail to approximately 15,000 addresses and 100,000 email addresses connected to new car dealerships in the Included States. (Jue Decl.) Initially, four dealership groups elected to opt out of the Settlements. (*Id.*) However, after

16

consulting with counsel for the Auto Dealers, one or more of the dealership groups may withdraw the request and instead elect to participate in the Settlements. (Raiter Decl.) The absence of any objections and the small number of opt-outs speaks loudly about the adequacy of the Settlements.

### E. The Public Interest Supports Granting Final Approval to the Settlements.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205); *see aslo Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12. In light of the conduct at issue and guilty pleas related to the claims here, there is no countervailing public interest that provides a reason to disapprove the Settlements. *Griffin*, 2013 WL 6511860, at *5. This factor also supports final approval.

### F. The Settlements are not the Product of Collusion.

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Int'l Union,*, 2006 WL 1984363, at *26; *Sheick*, 2010 WL 4136958, at *19–20. The Settlements here were reached after adversarial litigation and often contentious discovery. The negotiations leading to the Settlements were entirely arms' length and often took many months of settlement proposal exchanges. The Settlements were negotiated in good faith with counsel on each side zealously representing the interests of their clients.

## II. Notice of the Settlements was Proper Under Rule 23 and Met Due Process Requirements.

Fed. R. Civ. P. 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." For Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The purpose of notice in a class action is to "afford members of the class due-process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)). Due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action, and affording them the opportunity to opt out or object. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985); *see also UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548–53 (N.D. Ga. 1992); Manual for Complex Litigation (4th) § 21.311 ("Manual"). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due-process." *Grunin v. Int'l House of* Pancakes, 513 F.2d 114, 121 (8th Cir. 1975). Each class member need not receive actual notice for the due-process standard to be met, "so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996).

Where names and addresses of known or potential class members are reasonably available, direct-mail notice should be provided. *See, e.g.*, *Eisen*, 417 U.S. at 175–76; Manual, § 21.311. If the names and addresses of class members cannot be determined by reasonable efforts, notice by

publication is sufficient to satisfy the requirements of the due-process clause and Rule 23.  *Mullane*, 339 U.S. at 317–18; *Carlough v. Amchem Prod., Inc.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993).

### A.     There Were No Objections to the Notice Content or Plan.

As with the first group of Auto Dealer settlements, no member of the Settlement Class objected to or criticized the notice program.  (Jue Decl.)  The program was primarily a direct mail program that targeted class members and was supplemented by published notice in industry-specific publications.  The notice program easily satisfied the requirements of Rule 23 and due process.  *Packaged Ice*, 2011 WL 717519, at *5; *Sheick*, 2010 WL 4136958, at *15.

### B.     Timing of CAFA Notices and Final Approval Orders.

Each of the Defendant groups involved in the Settlements have provided the notices to public officials required by 28 U.S.C. § 1715.  Some of the Defendants have provided supplemental information about the Settlements to those officials and, out of an abundance of caution, have requested that the Court's order providing final approval of their settlements not be issued until 90 days after the last supplement.  The timing of those approvals is addressed in the proposed order being submitted with this motion.

### III.    Certification of Settlement Classes is Appropriate.

In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of settlement only, Settlement Classes relating to the parties and parts covered by the Settlements.  It is well-established that a class may be certified for purposes of settlement.  *See, e.g.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); *Int'l Union*,, 2006 WL 1984363, at *3, *18; *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 516–19; *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 266–70 (E.D. Ky. 2009).  The Settlements meet the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2) and 23(b)(3) for settlement purposes.

### A.    The Auto Dealer Settlement Classes Satisfy Rule 23(a).

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one subsection of Rule 23(b).  *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at \*5; *Int'l Union*, 2006 WL 1984363, at \*19 (citing *Sprague v. Gen Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).  Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.  *Griffin*, 2013 WL 6511860, at \*5; *Date*, 2013 WL 3945981, at \*3.

### 1.    The Settlement Classes are Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no strict numerical test to satisfy the numerosity requirement, and the most important factor is whether joinder of all the parties would be impracticable.  *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity).  Numerosity is determined by the number and geographic location of class members.  *Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).  The notice for these Settlements was mailed to approximately 15,000 automobile dealership entities, geographically dispersed throughout the United States.  There are thousands of Settlement Class members and joinder of all of them would be impracticable, satisfying Rule 23(a)(1).

### 2.    Common Questions of Law and Fact Exist.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class."  "We start from the premise that there need be only one common question

to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397; *accord Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at *3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996

"[A]llegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999) (citing 4 NEWBERG ON CLASS ACTIONS §§ 18.05-15 (3d ed. 1992)). Whether the settling Defendants entered into illegal agreements to rig bids and artificially fix prices of automobile component parts presents questions common to all members of the Settlement Classes. *Packaged Ice*, 2011 WL 717519, at *6 (holding that the commonality was satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class members." *Flat* Glass, 191 F.R.D. at 484.

Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met for the Settlement Classes.

### 3.    Auto Dealer Plaintiffs' Claims are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." Griffin, 2013 WL 6511860, at *6 (quoting *Int'l Union*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3. "Typicality is met if the class members' claims are

"'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399).

The claims of the named plaintiff Auto Dealers arise from the same course of conduct as the claims of the members of the Settlement Classes. Rule 23(a)(3)'s typicality requirement is satisfied for the Settlement Classes.

### 4. Auto Dealer Class Representatives and Their Counsel Have Fairly and Adequately Represented the Interests of the Class Members.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick*, 2010 WL 3070130, at *3 (quoting *Senter v. Gen. Motors Copr.*, 532 F.2d 511, 524-25 (6th Cir. 1976)). These requirements are met here.

The interests of the Auto Dealer representatives are the same as those of other Settlement Class members. These Plaintiffs are indirect purchasers of the parts and new vehicles at issue in this litigation and they, like the other Settlement Class members, claim that they were injured as a result of the alleged conspiracies and seek to prove that the settling Defendants violated antitrust and consumer laws. The named Auto Dealer Plaintiffs have the same interests as those of the members of the Settlement Classes. The Auto Dealer Plaintiffs have retained qualified and experienced counsel to pursue these cases. Counsel for the Auto Dealers have vigorously pursued this litigation and will continue to represent the interests of Auto Dealers. Adequate representation under Rule 23(a)(4) is therefore satisfied.

The Settlements do not provide preferential treatment to the named representatives. Under the Plans of Allocation, all similarly situated dealerships in the Included States will receive the same amount of money—calculated based on the number of type of vehicles and parts they purchased—

regardless of whether they are named plaintiffs or absent class members. The named plaintiffs' interests were and are aligned with those of the absent class members. *See, e.g., Shane*, 825 F.3d at 309.

**B.      Automobile Dealer Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.**

In addition to satisfying Rule 23(a), plaintiffs must show that the class falls under at least one of the three subsections of Rule 23(b). The Settlement Classes qualify under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

### 1.      Common Legal and Factual Questions Predominate.

The Rule 23(b)(3) requirement that common issues predominate insures that a proposed class is "sufficiently cohesive to warrant certification." *Amchem Products, Inc.*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beanie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy presents a common, predominating question. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008); *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at *6; *In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 WL 3521747, at *5, 9–11 (E.D. Tenn. Sept. 7, 2010). Affirming class certification in *Scrap Metal*, the Sixth Circuit observed that the "district court found that the 'allegations of price-fixing and market allocation . . . will not vary among class members' . . .

Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied."   527 F.3d at 535 (emphasis in original).

Here, the same set of core operative facts and theory of liability apply in each of the Settlements.  Whether the settling Defendants entered into illegal agreements presents questions common to all Settlement Class.  *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6.  If Automobile Dealer Plaintiffs and the other Settlement Class members brought individual actions, they would each be required to prove the same claims in order to establish liability.  For settlement purposes, common issues predominate.

### 2.    Class Action Settlements Are Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

The Auto Parts litigation has been centralized in this Court and there are no other known individual cases asserted against the Settling Defendants by a member of a Settlement Class.  Thus, consideration of factors (1) - (3) demonstrates the superiority of these Settlement Classes.  The fourth Rule 23(b)(3) factor  is not relevant in a settlement-only class because the potential difficulties in managing a trial of the case is extinguished by the settlement.  *Cardizem*, 218 F.R.D. at 517.

In addition, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own.*"  Cardizem*, 200 F.R.D. at 325 (quoting *Paper Sys. Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wis. 2000)).  Certifying the Settlement

Classes will conserve judicial and private resources and will provide a single outcome that is binding on all Settlement Class members. *Cardizem*, 200 F.R.D. at 351. The alternatives to these Settlements are a multiplicity of separate lawsuits or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *See In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y. 1996). The certification of Settlement Classes is superior to the alternatives in this litigation.

## IV.   The Court Should Appoint Settlement Class Counsel and Auto Dealer Class Representatives.

At preliminary approval, the Court provisionally appointed Interim Co-Lead Counsel for the Auto Dealers as class settlement counsel and appointed the named Auto Dealer representatives in those cases as the representatives of the provisionally certified class settlements. As part of the final approval process, the Court should appoint Cuneo Gilbert & LaDuca, LLP, Barrett Law Group, P.A., and Larson · King, LLP as Settlement Class Counsel. These firms have represented the Auto Dealers throughout the litigation and satisfy the requirements of Rule 23(g). The Court should also appoint the Automobile Dealer Plaintiffs named in the operative complaints in the Settlements as class representatives of their respective Settlement Classes.

## V.   The Court Should Approve the Plans of Allocation Submitted with this Motion.

The Auto Dealers also request that the Court approve the Plans of Allocation devised by the Auto Dealers' special allocation consultant. With this motion, the Auto Dealers submitted Plans of Allocation for 18 parts at issue in these Settlements and the Auto Dealer settlements previously approved by the Court. (See Exs. A-R to Raiter Decl.) Like the Plans of Allocation the Court has previously approved for Auto Dealer settlements, these Plans of Allocation distribute the net settlement proceeds to members of the Settlement Classes who submit claim forms for new vehicles and affected component parts purchased in the Included States. They use information available about the parts and brands and models targeted by anti-competitive conduct and apply a point-

25

based system that provides greater weight to the purchase of models and brands for which there is evidence that efforts were made to coordinate bids for component parts used in those vehicles.

The Plans of Allocation also provide an allocation to the purchase of the affected parts for use as replacement parts. (Exs. A-R). Reserve funds for future allocation and distribution were implemented to address the possibility that information not currently available about affected parts, models, and brands would become available in the future. (*Id.*) If that does not occur, the reserve funds will be distributed on a *pro rata* basis to the members of the Settlement Classes in their respective cases. (*Id.*) Eligible dealerships that submit a claim form will receive a minimum payment of $350 under the Plans of Allocation. (*Id.*)

The Plans of Allocation provide a fair and reasonable method for distributing the settlement funds, provide eligible members of the Settlement Classes with information about how the calculations will be made, and should be approved by the Court. *Cardizem*, 218 F.R.D. at 531. "'Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate.'" *Packaged Ice*, No. 08-MDL-01952, 2011 WL 6209188, at *15–16 (quoting *Meijer, Inc. v. 3M*, No. CIV.A. 04-5871, 2006 WL 2382718 at *17 (E.D. Pa. Aug. 14, 2006)); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)). "'Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.'" *Id.* (quoting *In re Aetna Inc.*, No. CIV. A. MDL 1219, 2001 WL 20928, at *12 (E.D. Pa. Jan. 4, 2001)); *Cardizem*, 218 F.R.D. at 531 (approving a plan as fair and reasonable that adopted a *pro rata* method for calculating each class member's share of the settlement fund). The Auto Dealers respectfully request that the Court approve these Plans of Allocation.[1]

---

[1] The settlement proceeds from the first group of Auto Dealer settlements will be distributed shortly after the Plans of Allocation are finalized. The claim administrator is finishing claim deficiency process and should be in a position to make final claim calculations in the near future.

26

**Conclusion**

For the foregoing reasons, Automobile Dealer Plaintiffs respectfully request that the Court grant final approval of the Settlements and certify the Settlement Classes for purposes of settlement.

Dated: November 14, 2016

By: /s/ Gerard V. Mantese
Gerard V. Mantese (P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200
Facsimile: (248) 457-9201
gmantese@manteselaw.com

*Interim Liaison Counsel for the Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com

Don Barrett
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834.2628
dbarrett@barrettlawgroup.com

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer Plaintiffs*

27

## <u>CERTIFICATE OF SERVICE</u>

I, Gerard V. Mantese, hereby certify that I caused a true and correct copy of **Auto Dealers' Memorandum in Support of Motion for Final Approval of Settlements With Certain Defendants, for Certification of Settlement Classes, and for Approval of Plans of Allocation** to be served via e-mail upon all registered counsel of record via the Court's CM/ECF system on November 14, 2016

_____/s/ Gerard V. Mantese_____
Gerard V. Mantese

28